THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYRONE CALHOUN, Defendant-Appellant.

First District (3rd Division)   No. 83—255

Opinion filed March 19, 1986.—Modified on denial of rehearing July 9, 1986.

Dennis M. Doherty, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Maureen A. Harton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:
Tyrone Calhoun was indicted with Demetrious Adamopolous and

Priscilla Orr for the murder of Jimmy Jackson and the armed robbery of Jackson and Joyce Anderson. Calhoun's trial was severed from the trial of his codefendants, and a jury convicted him of all charges. The State requested the death penalty. Calhoun waived a jury for the death penalty hearing, and the court sentenced him to an extended term of 80 years for the murder and to 30 years for the armed robbery of Jackson, the sentences to run concurrently. In addition, Calhoun received a 20-year sentence for the armed robbery of Joyce Anderson to run consecutively to the other sentences. From this judgment Calhoun appeals, claiming that he was denied effective assistance of counsel.

According to Calhoun, the instances of his trial counsel's ineffectiveness fell into three categories: (a) where the defense presented did not amount to a defense as a matter of law, (b) when defense counsel abdicated the defendant's position, admitting his guilt, and (c) when defense counsel showed lack of familiarity with basic concepts of law and committed numerous trial errors which cannot be viewed as tactical maneuvers.

At trial, Calhoun's lawyer advanced the theory that Calhoun was part of a conspiracy to steal money from Jimmy Jackson and that Calhoun did stab Jackson but that those stab wounds did not cause Jackson's death. Calhoun's trial counsel argued that Jackson was killed by stab wounds in the neck inflicted by Joyce Anderson, acting independently of Calhoun. It is Calhoun's contention that even if this theory were established, it would not absolve him of the murder because of his participation in the chain of events that led to Jackson's death. We disagree.

Calhoun's trial counsel presented the testimony of Dr. Hicks, who testified that the knife wounds in Jackson's back would not have been fatal with proper medical attention. Hicks testified that the knife wound in the neck, severing the jugular vein, was the primary cause of death. Thus, counsel presented evidence that Calhoun's acts alone would not have caused Jackson's death, and there was a intervening intentional act which was the proximate cause of Jackson's death. This presents a valid defense to the charge of murder. *People v. Gulliford* (1980), 86 Ill. App. 3d 237, 241, 407 N.E.2d 1094.

■ Calhoun argues that in the instant case these facts could not establish a valid defense because they show that Calhoun and Anderson shared a common design to kill Jackson, and therefore both were guilty of murder. (*People v. Kolep* (1963), 29 Ill. 2d 116, 121, 193 N.E.2d 753.) However, in order for the State to show that Calhoun was accountable for Anderson's acts, it would need to show that

Calhoun and Anderson shared a common plan to achieve a common goal in a "community of unlawful purpose." (*People v. Patterson* (1981), 102 Ill. App. 3d 844, 850, 430 N.E.2d 574.) Evidence that earlier that day Calhoun committed the armed robbery of Anderson tends to show that Calhoun was not cooperating with Anderson, nor were they following a common plan. Trial counsel appropriately argued to the jury that Anderson's actions were independent of Calhoun's. Therefore, we find that trial counsel presented a valid defense to the charge of murder.

■■ Calhoun next argues that his counsel abdicated his position and conceded his guilt in statements that Calhoun robbed and stabbed Jackson. However, counsel nowhere conceded that Calhoun was guilty of murder. From our reading of the record, defense counsel did not abdicate Calhoun's position as he now claims. The evidence of Calhoun's guilt of robbing and stabbing the victim was overwhelming. There was an eyewitness to the stabbing, Joyce Anderson, who was also a victim. Calhoun on three occasions admitted robbing and stabbing Jackson, and there was medical evidence corroborating his statements and the statements of Anderson. In the face of this evidence, a trial tactic in defense of a charge of murder which involves admission of some participation in what transpired cannot be labelled incompetence.

■■ Calhoun claims that his trial counsel was grossly incompetent, showing a lack of familiarity with basic concepts of law, and therefore Calhoun was denied due process of law. Calhoun cites several instances in the trial record which supposedly illustrate the incompetence. Our attention is directed to counsel's opening statement to the jury in which he said:

"You see, ladies and gentlemen, I intend to prove to the Court and to you, to everybody in this room, that Mr. Jimmy Jackson was stabbed by two different people. Tyrone Calhoun did stab Mr. Jackson. He stabbed Mr. Jackson in the back. And you see through the confession that Mr. Calhoun admitted to, and which, by the way, you will also see, it was the confession of Mr. Calhoun which broke this case wide open because just prior to the confession of Mr. Calhoun, these people by the name of Adamopolous and this young lady by the name of Priscilla Orr were allegedly bystanders. They were only witnesses. They were not labeled defendants. And Mr. Calhoun surrendered himself as you will hear and gave his confession. When the case broke open, everything that Mr. Calhoun said was verified and it was with Calhoun's aid that resulted in the arrest and prose-

cution of Adamopolous and Orr. And I am not saying this for you to have sympathy for Mr. Calhoun in no way. And through this entire case I am not asking you to have sympathy for Calhoun. I am asking for you to be truth seekers. So when I tell you that we will prove that two people stabbed Jimmy Jackson, what I am also going to show you is that after Tyrone Calhoun panicked, after he stabbed Mr. Jackson and ran from the room, something happened to Mr. Jackson. And I am also going to prove to you that the stab wounds that Tyrone Calhoun inflicted did not cause the death of Mr. Jackson."

Calhoun contends that trial counsel shifted the burden of proof to Calhoun in this passage, and he prejudiced the defense by repeatedly referring to Calhoun's statement as a "confession." We disagree.

The jury was reminded at several points throughout the trial that the burden of proving Calhoun guilty beyond a reasonable doubt remained on the State. For example, defense counsel stated in closing argument: "Ladies and gentlemen, I keep mentioning the term reasonable doubt. The State has to prove beyond a reasonable doubt that *** Tyrone Calhoun's actions were the cause of the death of Mr. Jimmy Jackson." On review of the record, we find that defense counsel did not shift to himself the burden of proving Calhoun's innocence.

Trial counsel referred to Calhoun's statements to the police as "confessions" as part of his defense to the murder charge. The State relied on one of Calhoun's statements in which Calhoun admitted robbing and stabbing Jackson. In taking that statement, an investigator asked Calhoun where he stabbed Jackson and Calhoun answered that he stabbed him in the back. The investigator did not challenge that answer. Trial counsel admitted that this statement constituted a confession of robbery and stabbing, but he used it as evidence that Calhoun only inflicted the nonfatal stab wounds in Jackson's back. His reference to the statement as a "confession" was an attempt to bolster the credibility of the statement. This tactic does not show trial incompetence. The same can be said of defense counsel's use of the word "mug shots," the adduction of evidence of the victims drinking, or witness Joyce Anderson's morals. Indeed, trial counsel in his summation to the jury gave a good explanation of his line of questions: "It was my intention only to give you an honest and accurate portrayal of the people in this tragic and unnecessary scenario." We cannot say even from hindsight that this approach showed professional incompetence.

Calhoun also claims that the State's closing argument denied him a fair trial. He complains that the prosecutor stated his personal

opinion of defense counsel's presentation in the following remarks:

"At the beginning of this case [defense counsel] made some promises to you. And I don't think that he has fulfilled any of those promises that he made to you. He also told you some things that I believe are not true. And one of the things that he told you was that Jimmy Jackson was killed by two different people. Now, there has never been any evidence produced in this trial that would indicate in any way that there was any more than this one murderer (indicating), one person who stabbed Jimmy Jackson to death."

The record shows that defense counsel in his opening statement did tell the jury that two people stabbed Jackson, and then at trial he offered no direct evidence of two stabbers. The prosecutor was not obliged to accept inferences to that effect which defense drew from the "confession" and the medical testimony. *People v. Jones* (1980), 83 Ill. App. 3d 168, 170, 403 N.E.2d 778.

■ The State in summation argued that "reasonable doubt happens ever[y] single day in this County. It is proved in every single case, hundreds of times a week, thousands of times a month." A defense objection to this was sustained. Calhoun here complains that "[t]he jury was not instructed to disregard the comment nor was the jury explained the court's basis for ruling. Argument of this nature has the effect of lessening the importance of the State's burden of proof by implying that reasonable doubt is merely a *pro forma* or minor detail."

In other cases, this court has upheld comments similar to those made by the prosecutor herein. (*People v. Green* (1983), 118 Ill. App. 3d 227, 235-36, 454 N.E.2d 792; *People v. Grigsby* (1982), 111 Ill. App. 3d 38, 45, 443 N.E.2d 746.) Our supreme court, in *People v. Bryant* (1983), 94 Ill. 2d 514, 447 N.E.2d 301, held that the prosecutor's characterization of the State's burden of proof as one which is "not unreasonable" and "met each and every day in courts," did not have the effect of reducing that burden. (94 Ill. 2d 514, 523, 447 N.E.2d 301.) We view similarly the remarks of the prosecutor here.

■ At trial the prosecutor argued to the jury that Calhoun's written statement (admitting only back wounds) should be discounted because it came from the Calhoun's "lying mouth," and continuing, said that the statement came from "the man who wants to save his skin." It had previously been argued that "truth and honesty" meant nothing "to a man like Tyrone Calhoun." Calhoun argues that comments by a prosecutor charging that Calhoun lied constitutes prejudicial error. (*People v. Weathers* (1975), 62 Ill. 2d 114, 120, 338 N.E.2d 880.) A

reasonable inference which could be drawn from the evidence was that Calhoun had lied. Calhoun's first oral statement contained an admission that he had stabbed the victim in the neck. Calhoun's two subsequent statements contained admissions that he had only stabbed the victim in the back. All three statements could not be true. There was evidence to support the prosecutorial comment that Calhoun's statement came from his "lying mouth." The comment was therefore within the bounds of legitimate argument. *People v. Watson* (1982), 103 Ill. App. 3d 992, 996, 431 N.E.2d 1350.

■ At trial, defense counsel used a police report to cross-examine a police officer regarding incidents to which he testified, but did not include in his police report. Referring to this cross-examination, defense counsel in his closing argument stated in part:

"Not once did he say anywhere in his report, does it say that Calhoun admitted that he stabbed him in the neck.' Not once. *** [A]nd if it was true that when Calhoun first came in and sat down and *** if Calhoun did say, 'Yes. I did stab him in the neck,' don't you think it would be in his reports?"

To this the prosecutor responded:

"The police reports. Police reports. Counsel thinks they are very important. And he tells you that there's things missing in the police reports. Well, just so you know how important the police reports are, you are not going to be getting any back there. You won't be getting any police reports about this case."

It thus appears that the prosecutor's statement was invited. Overruling defense counsel's objection to it was not error.

■ On appeal, defendant contends that the prosecutor's remarks in oral argument regarding defendant's expert witness were prejudicial and warrant a new trial. No objections were interposed by the defendant when the remarks were made. The prosecutor told the jury:

"[S]ince Tyrone said that he did it four times in the back, the good doctor comes in here never having had an opinion before yesterday, before yesterday and he said, 'I came in here without any opinion at all.' And yesterday, yesterday he comes up with, 'The cause is the stab wound to the neck.'

Think about Dr. Hicks. While he was marking the photographs, first he said, 'This was the stab wound that killed Jimmy Jackson.' Then he said, 'This was the stab wound that killed Jimmy Jackson.' Then he switched his mind one more time and said, 'No. I want to change again. This is one that did it.' And then after all that he said, 'Well, it really doesn't mat-

ter which one it was.' He said that. He said, 'It really doesn't matter, but I know one of them did it, but I don't know which one.' "

These remarks were clearly comments on the evidence. Then the assistant State's Attorney continued:

"[A]re you going to buy that? We know he can be bought. Are you going to buy what he told you? Of course you are not. And I apologize that you had to be, and you had to see part of the system when it is, it is not really true and honest."

When on the stand the doctor had testified that he expected to be paid for his testimony, paid only what the court allowed. This testimony gave an evidentiary basis for the prosecutor's argument. We find no reversible error in that argument.

After the jury returned guilty verdicts against Calhoun, he waived his right to have the jury make the determination as to whether or not the death penalty should be imposed. Following this, it appears from the colloquies in the record that both counsel for defense and counsel for the State requested a presentence investigation.

"MR. REHLING [prosecutor]: All right. I would make the suggestion that we just order a pre-sentence investigation at this time.

THE COURT: No. It is not required.

＊ ＊ ＊

MR. NAGELBERG [defense counsel]: Judge, don't we need a pre-sentence investigation?

THE COURT: No. No. This is it. ＊＊＊ In these kinds of cases you go with it just like it is. You don't need a pre-sentence report."

■■ ■ Calhoun argues that this case must be remanded for resentencing because the court did not receive a written presentence report of investigation as required by section 5—3—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—3—1). Our supreme court has held that the requirement of a presentence report is mandatory. (*People v. Youngbey* (1980), 82 Ill. 2d 556, 562, 413 N.E.2d 416.) The State does not contest Calhoun's contention that section 5—3—1 is applicable to the instant proceedings. (*Cf. People v. Gaines* (1981), 88 Ill. 2d 342, 373, 430 N.E.2d 1046.) However, the State maintains that Calhoun was not prejudiced by the lack of a written presentence report, since the parties presented oral evidence of all matters which were to be presented in the written report.

According to section 5—3—2(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—3—2(a)):

"(a) The presentence report shall set forth:

(1) the defendant's history of delinquency or criminality, physical and mental history and condition, family situation and background, economic status, education, occupation and personal habits;

(2) information about special resources within the community which might be available to assist the defendant's rehabilitation ***;

(3) the effect the offense committed has had upon the victim or victims thereof, and any compensatory benefit that various sentencing alternatives would confer on such victim or victims;

(4) information concerning the defendant's status since arrest ***;

(5) when appropriate, a plan, based upon the personal, economic and social adjustment needs of the defendant ***; and

(6) any other matters that the investigatory officer deems relevant or the court directs to be included."

Our review of the record indicates that the information required in subparagraphs (1), (3), and (4) was adequately presented to the court. Calhoun does not contend that the State presented any inaccurate or misleading information concerning those subjects. The information specified in subparagraphs (2) and (5), concerning alternatives to institutional sentencing, is irrelevant in this case since the trial court was required to sentence Calhoun to a minimum of 20 years' imprisonment. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(a).) We find that the trial court did not abuse its discretion in failing to direct the investigation of other matters pursuant to subparagraph (6) above.

We find that the court received all of the information that should have been presented in the written presentence report. We do not see how Calhoun was prejudiced by the lack of a written report. The omission of statutorily required procedure in a sentencing hearing, when the omission amounts to a technical or formal error which does not prejudice defendant, does not require remand for resentencing. (*People v. Williams* (1981), 96 Ill. App. 3d 958, 965, 422 N.E.2d 199; *People v. Taylor* (1980), 82 Ill. App. 3d 1075, 1077-78, 403 N.E.2d 607.) Although the trial court erred in failing to order a presentence report, we hold that the error was harmless. Therefore, we affirm the sentence imposed on the murder charge.

■■■ However, the State also charged Calhoun with the armed robberies of Jackson and Anderson, and Calhoun pleaded not guilty. Trial counsel presented no defense to the charges; instead he con-

838

ceded that Calhoun was guilty of armed robbery in his opening statement, his closing argument, and in his presentation of the evidence. There is no indication in this record that Calhoun ever agreed to concede his guilt of the armed robbery. As our supreme court recently stated:

"Counsel may not concede his client's guilt *** where a plea of not guilty has been entered, unless the record adequately shows that defendant knowingly and intelligently consented to his counsel's strategy." (*People v. Hattery* (1985), 109 Ill. 2d 449, 465.)

We find that Calhoun was denied the effective assistance of counsel in defending the charges of armed robbery, and accordingly, we reverse the convictions and sentences on these charges and remand for retrial.

For the above reasons, we affirm the conviction of Calhoun for the murder of Jackson, and we reverse his convictions for the armed robberies of Anderson and Jackson.

Affirmed in part, reversed and remanded in part.

RIZZI, P.J., and McGILLICUDDY, J., concur.