THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LA-
FAYETTE WOODS, Defendant-Appellant.— THE PEOPLE OF THE
STATE OF ILLINOIS, Plaintiff-Appellee, v. PHILLIP CLEAVES, Defend-
ant-Appellant.

Fifth District   Nos. 5—85—0434, 5—85—0435 cons.

Opinion filed December 23, 1986.

Randy E. Blue and Lori J. Lanciani, both of State Appellate Defender's Office, of Mt. Vernon, for appellants.

Mark H. Clarke, State's Attorney, of Cairo (Kenneth R. Boyle and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, and Cheri A. Novak, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendants, Lafayette Woods and Phillip Cleaves, were convicted of burglary and theft after a consolidated jury trial in the circuit court of Alexander County of May 13 and 14, 1985. Each defendant was sentenced to concurrent terms of imprisonment of four years for burglary and three years for theft. Each defendant perfected an appeal, and the causes were consolidated for argument and decision in this court.

On appeal defendants contend: (1) that they were not proved guilty beyond a reasonable doubt; (2) that the charging instruments failed to state an offense; and (3) that they were denied the effective assistance of counsel. We reverse and remand for a new trial.

James Graves testified as follows at trial: On February 25, 1985, at approximately 8 p.m., he and the two defendants were riding around in Woods' green, four-door Ford LTD. Graves had the idea to steal a battery, and he (Graves) drove to a parking lot near the Mainliner Lodge in Cairo, Illinois. Graves testified that he opened the hood of a parked car and, with the assistance of the defendants, reached inside and removed the battery of the car. The three of them went up under the hood, and the two defendants loosened the bolts on the bar holding the battery down and removed the bar. Graves lifted the battery out and carried it to the trunk of Woods' car. Graves then drove them out of the parking lot. A police officer later pulled the car over and discovered the battery in the trunk. On cross-examination Graves testified that he pleaded guilty to burglary and theft and was sentenced to probation in return for his testimony.

Millard Williams testified that on February 25, 1985, his 1965 Plymouth was parked in the lot at the Mainliner Motel. That night, after being informed by the motel clerk that the battery had been stolen from his car, Williams went out to his car and found the hood up and the battery missing. Williams also stated that the keys that he had left on the seat were instead in the ignition. At trial he identified the battery found in Woods' car as the battery from his car.

Richard Washington testified that on the evening of February 25, 1985, he was in Cairo, Illinois, and the Mainliner Hotel. He and Ollie Hudson saw three young black men running from the parking lot.

Washington testified that one of the three men was bent over as if he was carrying something heavy. Washington noticed that one of the men was wearing an army field jacket and another was wearing a beige coat. He stated that he was unable to see their faces. According to Washington, the three men opened the trunk of a car, put the heavy object inside, and drove away with the lights turned off. Washington and Hudson then got into their car to follow the three men, who were riding in a green, four-door Ford bearing a Kentucky license. Washington testified that they had assumed that the three men had stolen something because there had been problems in the parking lot, "batteries coming up stolen." After getting the Kentucky license number from the green Ford, Washington and Hudson went to the police station and gave the police the license number and a description of the three men's clothing and actions. Washington told the police that as he passed the men in the car, he saw that one of them was wearing a black baseball cap with stripes around it. Washington was unable to state whether the man wearing the black cap was also wearing either the beige coat or the green jacket that he had seen before. Later at the police station, Washington identified the clothing that Graves and the defendants were wearing as that worn by the persons he saw in the parking lot.

Corporal Fleming of the Cairo police department testified that at 8:50 p.m. on February 25, 1985, he received a call from the dispatcher informing him that a battery had been stolen at the Mainliner Lodge and that three black males in a green Ford with Kentucky license LSP632 were suspects. Fleming testified that 12 minutes later he stopped a car answering this description. The driver of the car, Graves, informed Corporal Fleming that the car belonged to Woods. Fleming testified that Woods gave him permission to look inside the trunk and Woods informed him that there was a battery there that belonged to Woods. At the time of the stop, Cleaves was also a passenger in the vehicle. Fleming testified that Graves was wearing a green jacket, Woods was wearing a brown jacket, and Cleaves had on a black baseball cap.

Officer Fleming placed the three men under arrest and transported them to the police department. He also took the battery into evidence. He later identified the battery at trial. At the police station Officer Fleming spoke with Washington, who identified the clothing that was taken from the three men who were arrested as the clothing that he had seen on the men whom he followed. Officer Fleming then left the station and went to the Mainliner Lodge to locate the vehicle from which the battery had been taken. There he observed a gold Fury in the parking lot with its hood up and its battery missing. He found that

the car belonged to Millard Williams of Centralia, Illinois.

Phillip Cleaves testified that on February 25, 1985, between 8 p.m. and 9 p.m., he was at Louis Jones' house to inquire about employment. Cleaves testified that he did not actually talk to Jones but instead talked to a woman, Jones' wife or daughter. He was told that Jones was asleep. Cleaves testified that after he left Jones' house, he went to his mother's house for dinner. After dinner he went outside and upon seeing Graves and Woods in the car, asked them for a ride to town. He stated that he was in the car less than four minutes when the police arrived. Cleaves testified that he had no knowledge of the theft of the battery.

Lafayette Woods testified that on the evening of February 25, 1985, he was at Arlene Davis' house playing cards and drinking with Graves. Woods stated that because he did not have a driver's license, he asked Graves to go out and get some beer. Woods testified that when Graves returned without the beer about a half hour later, he got into the car with him. Woods testified that shortly after he got into the car, the police stopped them. Woods stated that at the time of the arrest, he was wearing a yellow shirt, blue jeans, and a reddish wool tweed jacket. According to Woods, he told the police officer when he stopped the car that he had sold a battery earlier that day, not that he had a battery in the trunk, as Fleming testified. On cross-examination, Woods testified that he had driven to Solomon's junkyard earlier that day and had sold the battery to a short, thin black male in his late twenties or thirties who was working there. Woods testified that he had no idea that there was a battery in the trunk of his car and that he was not involved in the theft of the battery.

Louis Jones testified that on the evening of February 25, 1985, at some time after dark but before 10 p.m., Phillip Cleaves came to his house to discuss employment at the business for which Jones was a foreman. Jones testified that his daughter answered the door but that he could see Cleaves through the door. He stated that he talked to Cleaves a few minutes, informing him that he had scheduled Cleaves to work the next morning.

Steven Solomon testified that he was the owner of Solomon's junkyard and that on February 25, 1985, he did not have in his employ a short, thin black male under 40 years of age.

■■ Defendants first urge that they were not proved guilty of burglary beyond a reasonable doubt because their alleged actions, opening the hood of the car and taking the battery, are excluded from the burglary statute and are instead included under the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—102).

Section 19—1(a) of the Criminal Code of 1961 provides as follows:

"A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in The Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft. This offense shall not include the offenses set out in Section 4—102 of The Illinois Vehicle Code, nor the offense of residential burglary as defined in Section 19—3 hereof." (Ill. Rev. Stat. 1985, ch. 38, par. 19—1(a).)

Section 4—102 of the Illinois Vehicle Code provides in part:

"(a) It is a violation of this Chapter for:

(1) A person, without authority to do so, to damage a vehicle or to damage or remove any part of a vehicle;

(2) A person, without authority to do so, to tamper with a vehicle or go in it, on it, or work or attempt to work any of its parts, or set or attempt to set it in motion." (Ill. Rev. Stat. 1985, ch. 95½, pars. 4—102(a)(1), (2).)

We note that neither defendant raised this issue in the trial court and therefore this court may consider it to have been waived. See *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857.

■ Moreover, it is well established that one may be convicted of burglary of a motor vehicle. Section 4—102 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 4—102) has been interpreted to be an antitampering or vandalism statute applicable only to acts performed without intent to commit theft. (*People v. Dail* (1985), 139 Ill. App. 3d 941, 943, 488 N.E.2d 286, 287; *People v. Lanpher* (1978), 59 Ill. App. 3d 825, 827, 376 N.E.2d 433, 435; *People v. Joyner* (1978), 57 Ill. App. 3d 948, 951-52, 373 N.E.2d 778, 781; *People v. Bournes* (1977), 55 Ill. App. 3d 237, 241, 370 N.E.2d 1230, 1233.) The burglary counts of the amended informations herein alleged that defendants possessed the intent to commit theft, and the instructions required the jury to find such intent before returning guilty verdicts on those counts. Therefore, we conclude that the evidence herein was sufficient to establish defendant's guilt of burglary beyond a reasonable doubt.

■ Defendants also contend that the charging instruments do not state an offense, advancing the same argument that their alleged conduct is not included under the burglary statute. However, the record indicates that the burglary counts of the amended informations were in the language of the burglary statute (Ill. Rev. Stat. 1985, ch. 38, par. 19—1(a)) and that they alleged that the defendants possessed the requisite intent. They also identified the owner of the car, the approximate location of the burglary, and the specific statute which defendants were

alleged to have violated. The informations were therefore sufficient to state an offense and they fully apprised defendants of the charges against them. See *People v. Walker* (1977), 47 Ill. App. 3d 737, 740, 365 N.E.2d 428, 431.

■ Finally, defendants urge that they were denied the effective assistance of counsel when their trial attorney abandoned their theory of innocence during closing argument. We agree.

During his opening statement defendants' attorney stated that defendants "had no knowledge of any theft of any battery." During the trial both defendants testified that they were not with Graves at the time of the burglary and that they were not involved in the theft of the battery. Yet in closing argument defendants' attorney stated:

"[W]e have one individual [Graves] who got up on the witness stand and said yes, I'm a thief. Yes, I stole the battery, yes it was my idea, yes I was driving the car. Yes, I picked it up and yes, I carried it and put it in the trunk of the other car. He's doing all these things and he's the thief. And he should be punished and he got probation. Well, you should consider that and the State's Attorney almost came out and said, why is there such a big ta-do [*sic*] over a battery? Why? Because he wants to send these two gentlemen away for a lot of years. And, that isn't fair. Why didn't he charge them with murder, just because a person is guilty of one crime, doesn't make him guilty of alot [*sic*] of others. Punish them if they are guilty for crimes they have committed. They stole a battery. Now, we all have an idea of what a burglary is. And it will be defined in the instructions and you may or may not have here a technical burglary. \*\*\*

\*\*\* What I'm trying to do is tell you that its (*sic*) within your province to determine that this is merely a theft, not a burglary. One element of burglary is entering into. Did they enter in by merely popping the hood and taking the battery? \*\*\* [W]e can only speculate as to how the keys got moved, if indeed they did. They could have been moved by anyone, and unlocked the car at any time. It doesn't mean they were in the vehicle and if they were, they weren't in the vehicle with the intent to commit a theft therein. Because, the theft, whoever committed it went under the hood and not in the vehicle. So, let's keep this in the proper context. It's merely a theft and in this case, subsequent theft, because of the misfortune of a prior conviction."

Defense counsel did go on to inform the jury of the presumption of innocence, and he argued that it could have been different persons who committed the crimes with Graves. He also pointed out that Washing-

ton had not identified the defendants, just their clothing, and the clothing was not offered as evidence. Defense counsel also suggested that Graves had lied on the witness stand in order to ensure a favorable plea bargain in his own case. Counsel asked the jurors to return "a verdict form finding them not guilty."

On more than one occasion in his closing argument, defense counsel seems to be admitting that his clients were guilty of theft of the battery. It is apparent that counsel was attempting to avoid convictions for the more serious offense, as a subsequent conviction of theft is a Class 4 felony (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(e)(1)), while burglary is a Class 2 felony (Ill. Rev. Stat. 1985, ch. 38, par. 19—1(b)). However, his concession of the theft was completely contradictory to the defendant's theory of innocence and abdicated the position defendants had taken from the opening statement throughout the trial. Any admission of defendants' participation in the theft of the battery would have been contrary to defendants' position and could have resulted in a conviction for burglary since an accountability instruction was given. By contradicting his clients' testimony, defense counsel destroyed whatever credibility they had and effectively deprived them of a defense to the charges.

The United States Supreme Court recently noted that there are some circumstances so likely to prejudice the accused that prejudice need not be shown (*Strickland v. Washington* (1984), 466 U.S. 668, 692, 80 L. Ed. 2d 674, 696, 104 S. Ct. 2052, 2067.) In a companion case the court stated that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic* (1984), 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047.

The facts in the case at bar fall between the factual situations in *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, *cert. denied* (1986), 478 U.S. ___, 92 L. Ed. 2d 727, 106 S. Ct. 3314, and *People v. Calhoun* (1986), 144 Ill. App. 3d 829, 494 N.E.2d 498.

In *Hattery*, our supreme court held that defense counsel's concession of his client's guilt of murder at the guilt or innocence stage of the proceedings, in an attempt to avoid the death penalty, deprived that defendant of the effective assistance of counsel in violation of the sixth amendment (U.S. Const., amend. VI). (*People v. Hattery* (1985), 109 Ill. 2d 449, 465, 488 N.E.2d 513, 519.) In *Calhoun*, a prosecution for murder and two armed robberies, defense counsel conceded, in opening and closing statements and in the presentation of evidence, his client's guilt of the armed robberies but not the murder. In the absence of an indica-

tion in the record that Calhoun agreed to concede his guilt of the armed robberies, the court reversed the armed-robbery convictions and remanded the robbery charges for a new trial. (*People v. Calhoun* (1986), 144 Ill. App. 3d 829, 837-38, 494 N.E.2d 498, 504.) However, in neither case did defense counsel contradict his client's testimony or change his client's position during trial.

Under the factual circumstances of the case at bar, a confession of guilt as to theft was tantamount to a confession of guilt as to burglary. This is true both because a concession of theft was completely contradictory to defendants' testimony and theory of innocence and because there is no effective way to argue that defendants, by opening the hood and removing the battery, were guilty of theft but not burglary. See *People v. Frey* (1984), 126 Ill. App. 3d 484, 486-87, 467 N.E.2d 302, 303-04.

"Counsel may not concede his client's guilt * * * where a plea of not guilty has been entered, unless the record adequately shows that defendant knowingly and intelligently consented to his counsel's strategy." (*People v. Calhoun* (1986), 144 Ill. App. 3d 829, 838, 494 N.E.2d 498, 504 (quoting *People v. Hattery* (1985), 109 Ill. 2d 449, 465, 488 N.E.2d 513, 519, *cert. denied* (1986), 478 U.S. ___, 92 L. Ed. 2d 727, 106 S. Ct. 3314).) There is no indication in the record in the instant case that either defendant agreed to concede his guilt of any offense charged. Counsel's concessions during his closing statement nullified defendants' rights to have the issue of their guilt or innocence on each charge presented to the jury as an adversarial issue and consequently resulted in counsel's total failure to subject the prosecution's case to meaningful adversarial testing. We therefore conclude that there has been a denial of the sixth amendment right to the effective assistance of counsel that makes the adversary process itself presumptively unreliable. *United States v. Cronic* (1984), 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047; *People v. Hattery* (1985), 109 Ill. 2d 449, 465, 488 N.E.2d 513, 519, *cert. denied* (1986), 478 U.S. ___, 92 L. Ed. 2d 727, 106 S. Ct. 3314; accord, *State v. Harbison* (1985), 315 N.C. 175, 337 S.E.2d 504; see also *People v. Carter* (1976), 41 Ill. App. 3d 425, 429, 354 N.E.2d 482, 485.

For the reasons stated, defendants' convictions are reversed, their sentences vacated, and the causes are remanded to the circuit court for a new trial.

Reversed and remanded.

JONES and HARRISON, JJ., concur.