THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS BERNARDO, Defendant-Appellant.

First District (4th Division)   No. 84—3030

Opinion filed March 17, 1988.—Rehearing denied July 13, 1988.

James J. Doherty, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Paula Carstensen and Joanne M. Roddy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a bench trial, defendant, Thomas Bernardo, was convicted of attempted murder and aggravated battery (Ill. Rev. Stat. 1975, ch. 38, pars. 8—4, 12—4) and sentenced to eight years' imprisonment. On direct appeal, this court vacated his conviction for aggravated battery and affirmed his conviction for attempted murder. (101 Ill. App. 3d 1195 (opinion pursuant to Supreme Court Rule 23).) While the appeal was pending, defendant filed a petition for relief under the Illinois Post-Conviction Hearing Act (the Act) (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*) arguing that he was entitled to a new trial because he had been denied effective assistance of counsel. The trial court denied defendant's petition without an evidentiary hearing and he appeals.

We affirm.

BACKGROUND

Defendant was convicted of attempted murder for the shooting of Willie Fuller (Fuller) in an apartment building courtway in the late evening hours of November 27, 1976. Evidence presented by the State established that on that day, Fuller was visiting Mae Webb (Webb), his former girlfriend, at her apartment. Fuller had driven Webb home from the hospital where her year-old baby had been admitted with multiple bruises. While Fuller was at Webb's apartment, a man entered the front door, ordered Fuller to leave, pulled out a gun,

kicked Fuller in the chest, and ran out the front entrance. Shortly thereafter, Fuller also left the apartment. When he reached the courtway, the man with the gun appeared from behind the bushes and fired three shots before running away. Two shots grazed Fuller's head and neck; a third penetrated through his leg. Thereafter officers of the Chicago police department arrived at the scene and transported Fuller to a hospital. Chicago police officers arrested defendant approximately two weeks after the incident. Defendant was in a car with Webb when he was arrested.

Defendant denied that he shot Fuller. Defense evidence showed that on the evening in question, Fuller was at Webb's apartment, but had not driven her from the hospital to her home. At Webb's apartment, Webb told him that certain persons, including the defendant, may have been responsible for the injuries to Webb's child who was in the hospital. Webb testified that although Fuller was not the natural father of the child, he liked to think of the child as his. Fuller became angry when he learned of the child's injuries. Shortly thereafter, defendant and Rita Johnson (Johnson) appeared at the door of Webb's apartment. Fuller grabbed defendant, inquired who he was, and accused defendant of being Webb's "new boyfriend." Fuller then chased defendant down the stairs and outside the building. Meanwhile, Webb took from her apartment a gun that Fuller had previously given her and chased after the two men. As she was following them, she tripped on the sidewalk and her gun accidentally discharged several times, striking Fuller in the leg once.

The defense introduced evidence that Webb filed a criminal complaint against Fuller approximately a week after defendant was arrested. A few months after Webb filed her complaint against Fuller, Fuller offered to drop charges against defendant in exchange for Webb's dropping of the charges against Fuller. Webb agreed.

Thereafter, Webb, Fuller, and defendant's mother spoke in person to the partner of the assistant State's Attorney who was assigned to prosecute the defendant's case. According to Webb, Fuller told the assistant State's Attorney that Fuller was drunk on the night of the incident and that he wanted to withdraw his statement that defendant had shot him. Webb also testified that Fuller made this same retraction to defendant's attorney, Stan Hill (Hill), a month after Fuller's visit to the State's Attorney's office. Then Webb, Fuller, and Hill appeared before Judge Howard Miller, and Hill informed the judge of Fuller's recent disclosures and intention to have the charges dropped. During earlier cross-examination, Fuller denied having indicated to Webb and defense counsel that he wanted to retract his accusations

and denied having appeared with them before Judge Miller.

Webb was the first defense witness. After her testimony, Hill withdrew from the case in order to become a defense witness regarding Fuller's alleged attempt to withdraw his accusations of defendant. A second attorney, W. Maudlin Smith, filed an appearance on defendant's behalf and represented him during the remainder of the trial.

In rebuttal to the defendant's evidence, the State presented the testimony of an assistant State's Attorney who had appeared on behalf of the State at the hearing wherein Hill represented to the court that Fuller intended to retract his accusations against defendant. The assistant State's Attorney testified that the person who appeared before Judge Miller and identified himself as Fuller was not the same person who had testified on behalf of the State in defendant's trial.

The State also presented rebuttal evidence to show that Webb had originally explained the incident to the police as an argument between Fuller and defendant during which defendant displayed a gun. State rebuttal evidence also indicated that Webb had told certain persons that she was afraid of defendant and that she felt or had been threatened by him. In surrebuttal, Webb testified that she was afraid of defendant because she had initially lied to the police about his involvement in the shooting. She also stated that her fear of losing custody of her children caused her to persist in her initial story about defendant's involvement.

The trial court found defendant guilty of attempted murder and aggravated battery. On direct appeal, his conviction for aggravated battery was reversed by this court, and his conviction for attempted murder was affirmed. While the appeal was pending, defendant filed a petition for post-conviction relief. As ultimately amended, defendant argued in his post-conviction petition that he received ineffective representation from Smith and that his conviction had been based on perjured testimony. In support of his petition, defendant submitted the opinion of the Illinois Supreme Court ordering Smith's disbarment (*In re Smith* (1979), 75 Ill. 2d 134, 387 N.E.2d 316), Hill's affidavit, and a transcript of Judge Miller's pretrial hearing wherein Hill told the judge that Fuller, also present in court at the time, wanted to withdraw his statements against defendant.

Defendant also submitted Smith's affidavit in which Smith stated that during his representation of defendant, he was "suffering from mental illness, including blackouts and depression" that "seriously impaired [his] legal and professional judgment." In addition to mental illness, Smith stated that he suffered "severe mental and emotional strain because of pending disbarment proceedings, which have since

culminated in disbarment." He stated that because of these problems, he was unable to "formulate an effective defense." Defendant also argued that Smith was under a psychiatrist's care at the time of defendant's trial, that he "had been involved with the possession and use of certain narcotic drugs *** [a]nd had certain cases pending against him" during the trial.

The trial court denied defendant's petition for post-conviction relief without an evidentiary hearing, and defendant appeals.

OPINION

■ Under the Post-Conviction Hearing Act, the defendant has the burden of showing a substantial deprivation of his constitutional rights. He is not entitled to an evidentiary hearing as a matter of right, but should be granted one if he makes a substantial showing of a constitutional violation, supporting the allegations of his petition either from the record or by affidavit. (*People v. Silagy* (1987), 116 Ill. 2d 357, 365, 507 N.E.2d 830, *cert. denied* (1987), 484 U.S. 873, 98 L. Ed. 2d 163, 108 S. Ct. 212.) With these principles in mind, we consider defendant's claims that his petition and supporting affidavits entitled him to a new trial, or at least to an evidentiary hearing with respect to whether he was denied effective assistance of counsel.

Defendant's post-conviction petition alleged that he had been denied the effective representation of his trial counsel, who allegedly had been suffering from certain mental disabilities at the time of defendant's trial. Upon appeal, defendant now contends that his post-conviction counsel was also incompetent. Specifically, defendant maintains that his post-conviction petition failed to raise the issue of whether defendant was denied effective assistance during the direct appeal from his conviction. Defendant also asserts that his appellate counsel was ineffective because he raised only one issue on direct appeal, while the record reveals several meritorious issues regarding ineffective assistance of his trial counsel, and perjured testimony used to convict defendant at trial. We consider each of these additional assertions in the context of whether defendant received effective assistance of counsel at trial. See *People v. Jackson* (1987), 161 Ill. App. 3d 573, 581-85, 515 N.E.2d 219.

■ ■ Defendant argues first that his second attorney at trial, Maudlin Smith, was ineffective because he was suffering from a mental illness, drug addiction, and the mental strain of pending disbarment proceedings. Defendant maintains that if a defense attorney who represents a criminal defendant at trial is suffering from a mental disorder, active drug addiction, or mental strain that tends to in-

terfere with his judgment and ability to function effectively as an attorney, then logic dictates that his ineffectiveness would pervade the whole proceeding and cast doubt on the fairness of the adversarial process itself. Defendant asserts that counsel who is impaired by mental illness, active drug addiction, or mental strain is the equivalent of no counsel at all. Under these circumstances, defendant maintains, a showing of actual prejudice based upon particularized errors is unnecessary.

To support his argument, defendant relies upon *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039. In *Cronic*, the United States Supreme Court indicated that prejudice to a criminal defendant may be presumed when the "circumstances surrounding the representation of [defendant] mandate[ ] an inference that counsel was unable to discharge his duties." (466 U.S. at 658, 80 L. Ed. 2d at 667, 104 S. Ct. at 2046.) The *Cronic* standard applies, for example, where there has been a total denial of counsel at a crucial stage in the accused's trial, a denial of the defendant's right to cross examine a witness (*Cronic*, 466 U.S. at 658-59, 80 L. Ed. 2d at 668-69, 104 S. Ct. at 2046-47), or an admission of defendant's guilt by defense counsel without defendant's consent. See *People v. Hattery* (1985), 109 Ill. 2d 449, 461-64, 488 N.E.2d 513, *cert. denied* (1986), 478 U.S. 1038, 92 L. Ed. 2d 727, 106 S. Ct. 3314; *People v. Woods* (1986), 151 Ill. App. 3d 687, 694, 502 N.E.2d 1103.

As examples of decisions where the courts have applied a standard closely similar to that of *Cronic*, defendant cites to *People v. Williams* (1983), 93 Ill. 2d 309, 444 N.E.2d 136, and *People v. Rainge* (1983), 112 Ill. App. 3d 396, 445 N.E.2d 535. Although decided before *Cronic*, these cases, in defendant's view, illustrate circumstances where prejudice to a defendant may be inferred or presumed because of defense counsel's mental strain. Based upon these authorities, defendant argues that it is not incumbent upon him to show that he was prejudiced by Smith's representation of him at trial; instead, such prejudice may be presumed.

In *Williams* and *Rainge*, the defendants were co-defendants represented in a capital case by the same attorney. The defendants' attorney was disbarred for conversion of client funds as a result of a disciplinary proceeding which was in progress during the attorney's representation of the defendants. In light of these circumstances, the Supreme Court found it could not characterize counsel's failure to make certain motions as professional misjudgments. (*People v. Williams* (1983), 93 Ill. 2d 309, 325, 444 N.E.2d 136, 143; see also *People v. Rainge* (1983), 112 Ill. App. 3d 396, 411-13, 445 N.E.2d 535.) Con-

sequently, "considering the unique circumstances and sequence of events in this capital case, which will rarely, if ever be duplicated, [the Court determined] that the interests of justice require that [defendants] be granted a new trial." *Williams*, 93 Ill. 2d at 325, 444 N.E.2d at 143; see also *Rainge*, 112 Ill. App. 3d at 413.

Defendant asserts that because his trial counsel Smith was subject to disbarment proceedings during his representation of defendant, defendant is entitled to a new trial as were the defendants in *Williams* and *Rainge*. Defendant's argument is not well founded. Unlike the defendants in *Williams* and *Rainge*, the defendant here was not charged with a capital offense, but was prosecuted for the crimes of attempted murder and aggravated battery. Also, the supreme court pointedly observed in *Williams* that the facts of that case presented "unique circumstances and sequence of events *** which will rarely, if ever be duplicated." (*Williams*, 93 Ill. 2d at 325, 444 N.E.2d at 143.) In view of the supreme court's remark that the result of *Williams* should obtain, if ever, only with great caution, we decline to adopt the defendant's suggested view that *Williams* enunciates a *per se* rule automatically permitting all criminal defendants a new trial whenever they were represented at trial by an attorney subject to disbarment proceedings.

Defendant also contends that his trial counsel's suffering from mental illness and narcotic use presented circumstances so likely to prejudice his defense that he should be accorded a new trial without specific reference to particular errors on the part of his trial counsel. The point is not well taken. In *Cronic*, the United States Supreme Court determined that prejudice should not be presumed where defense counsel had only a short period of time to prepare for trial, because the matter was not a capital offense and the evidence against the defendant was neither complicated nor voluminous.

The circumstances of the case at bar are, in important respects, substantially similar to those of *Cronic*. In the instant case, the defendant was not prosecuted for offenses which could have resulted in the imposition of the death penalty. Also, the evidence against defendant was not complicated or voluminous; in fact, the State's case in essence consisted of Fuller's testimony that he saw the defendant shoot him. Defendant's theory was that Fuller was lying, because he harbored a grudge against defendant on the belief that defendant had abused one of the children of Fuller's former girlfriend, Webb, in whom Fuller still had a romantic interest. Defense evidence also sought to establish that it was Webb who accidentally shot Fuller, and that she initially named defendant as the perpetrator because Webb

was fearful that the truth would cause her to lose custody of her children. This defense also did not represent complicated or voluminous evidentiary matters. For these reasons, the standard recognized in *Cronic* is not apposite to the facts of this case. See *Cronic*, 466 U.S. at 663-66, 80 L. Ed. 2d at 670-73, 104 S. Ct. at 2049-51.

Based on the above-stated considerations, we conclude that the case at bar does not present "circumstances surrounding the representation of [defendant that] mandate[ ] an inference that counsel was unable to discharge his duties." (*Cronic*, 466 U.S. at 658, 80 L. Ed. 2d at 667, 104 S. Ct. at 2046.) Consequently, we determine that prejudice to the defendant may not be presumed or inferred, but must be affirmatively shown in the record in accordance with *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. See *Cronic*, 466 U.S. at 665-66, 80 L. Ed. 2d at 671-73, 104 S. Ct. at 2050-51.

The case of *Dillon v. Duckworth* (7th Cir. 1984), 751 F.2d 895, *cert. denied* (1985), 471 U.S. 1108, 85 L. Ed. 2d 859, 105 S. Ct. 2344, upon which defendant also relies, further supports our conclusion that the *Strickland* standard is applicable to the facts of this case. In *Dillon*, the defendant's attorney had only a few years' legal experience and had never previously represented a defendant in a murder case. After three major personal tragedies came upon him in quick succession, the attorney realized "how seriously this series of events had compromised his preparation." (*Dillon v. Duckworth* (7th Cir. 1984), 751 F.2d 895, 899.) The trial judge denied the defense attorney's request for a continuance, and the case proceeded to trial. At trial, the attorney's "lack of preparedness evidenced itself" in such a way that no possible trial strategy could justify his actions. (*Dillon*, 751 F.2d at 900-01.) In concluding that defendant was entitled to a new trial, the court applied the standard for ineffective assistance of counsel set forth in *Strickland*. 751 F.2d at 897-901.

■ In accordance with these precedents, we consider defendant's claim that Smith rendered him ineffective assistance of counsel pursuant to the *Strickland* rule. Under *Strickland*, defendant must establish that (1) defense counsel's performance was so deficient that it fell below standards of reasonable professional performance and (2) this deficient performance so prejudiced defendant that he was denied a fair trial. (*Strickland*, 466 U.S. at 688-94, 80 L. Ed. 2d at 693-98, 104 S. Ct. at 2064-68.) Evaluation of defense counsel's performance must be premised on a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 2065, 104 S. Ct. at 694-95.) In

determining prejudice, the court must inquire "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt concerning guilt." *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.

■ Defendant first asserts that during trial, Smith abandoned faith in Webb's testimony. The record indicates that Smith motioned for a mistrial after he began his representation of the defendant. Smith argued, *inter alia*, that while certain portions of Webb's testimony lacked credibility, the testimony was nevertheless truthful regarding the essential facts which corresponded with defendant's account of the incident. After a careful review of the record, we determine that Smith's remarks did not amount to abandonment of a key witness. Rather, his statements were an attempt to ameliorate the negative impact of the numerous inconsistencies in Webb's trial testimony. Regardless of whether his statements were or were not a preferable trial strategy, we cannot conclude that the remarks prejudiced the defendant such that, had the statements not been made, the fact finder would have held a reasonable doubt of the defendant's guilt.

■ Defendant also argues that Smith failed to exercise due diligence in locating an unbiased eyewitness in time for trial. Defendant contends that there was no question the witness was crucial, because she could have testified to the effect that defendant had not committed the shooting. Defendant does not explain his attribution of this alleged failing to Smith. Because Smith did not begin his representation of defendant until mid-trial, we cannot conclude that Smith could or should have located the witness prior to trial. Accordingly, we find defendant's argument in this regard insufficient ground to grant him a new trial on the theory that Smith rendered defendant ineffective assistance of counsel.

■ As further illustration that Smith was ineffective, defendant cites to his failure to introduce certain evidence, to object to certain questions posed by the State, or to recall certain details during questioning of a witness or argument to the court. We have reviewed the matters raised by defendant, but find that any irregularity in Smith's alleged failures did not pertain to matters which would have been sufficient to raise a reasonable doubt of defendant's guilt. We find defendant's assertions with respect to his representatIon by Smith at trial insufficient to overturn the trial judge's denial of his post-conviction petition without an evidentiary hearing.

■ Lastly, defendant contends that his appellate counsel should have argued that he was entitled to a new trial because his conviction

was based on perjured testimony. Defendant claims that the transcript of Judge Miller's pretrial hearing shows that Fuller recanted his accusation against the defendant.

The "deprivation of an individual's liberty based on false testimony is contrary to fundamental principles of fairness in a civilized society. [Citation.]" (*People v. Cihlar* (1986), 111 Ill. 2d 212, 216-17, 489 N.E.2d 859, 861.) However, the trial judge, sitting as trier of fact in defendant's bench trial, determined that the individual who recanted the victim's accusation against the defendant was not, in fact, the actual victim. This factual determination is supported by the testimony of Fuller, who stated that he did not tell Hill that he wanted to withdraw his statements against the defendant and that he did not appear with Hill when Hill made a representation to this effect to Judge Miller. The fact finder's determination is also supported in the trial testimony of the assistant State's Attorney to the effect that it was only after the hearing before Judge Miller that the assistant State's Attorney learned that the person who stated his desire to withdraw the accusations against defendant was not in fact the complaining witness, Fuller. The transcript of the hearing before Judge Miller includes only Hill's representation to the court about Fuller's intention to recant his accusation against defendant, and the response of the assistant State's Attorney that, notwithstanding the individual's desire to recant his accusations, the office of the State's Attorney had spoken with individuals involved in the incident and intended to pursue prosecution. Under these circumstances, the record does not demonstrate that defendant was convicted on the basis of perjured testimony by Fuller or the assistant State's Attorney.

In light of these conclusions, we determine that neither defendant's trial counsel Smith, his appellate counsel, nor the attorney who represented him during post-conviction proceedings rendered defendant ineffective assistance of counsel such that he should be allowed a new trial.

For the reasons stated, the order of the circuit court of Cook County is affirmed.

Affirmed.

LINN and JOHNSON, JJ., concur.