UNITED STATES of America ex rel.
Derrick POTTS, Petitioner,

v.

Warden CHRANS and Attorney General
of Illinois, Respondents.

No. 87 C 417.

United States District Court,
N.D. Illinois, E.D.

Nov. 30, 1988.

David M. Levin, Young & Levin, Chicago, Ill., for petitioner.

Michele Lavin, Mark L. Rotert, Office of Illinois Atty. Gen., Criminal Appeals Div., Chicago, Ill., for respondents.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Derrick Potts has filed a petition for a writ of habeas corpus seeking release from his incarceration in an Illinois prison. He contends that his conviction for voluntary manslaughter was not supported by sufficient evidence and that he was deprived of the right to effective assistance of counsel at trial. After respondent filed his answer and supporting memorandum, this court appointed counsel for petitioner. At a subsequent status hearing, however, appointed counsel stated that, in light of his review of the state court record and respondent's arguments, he believed that Rule 11 of the Federal Rules of Civil Procedure prevented him from arguing in support of the petition. The court will thus rule on the basis of the record and briefs already before it. These papers reveal that petitioner must prevail, and that appointed counsel's refusal to advocate his cause constitutes a serious breach of professional responsibility.

### FACTS

In late February, 1983, Jerome Miller died of gunshot wounds he sustained in a violent confrontation involving a number of men in an apartment building in west Chicago. A short time later, petitioner and three others, Charles Gavel, Ray Taylor and Alexandro Smith, were arrested. During questioning, petitioner admitted that he had fired three shots at Miller with a .38 caliber pistol as Miller was attempting to flee down a stairwell, and that at least one of those shots hit the mark.

The state indicted Taylor, Gavel and petitioner for the murder, armed violence and unlawful restraint of Miller, as well as aggravated battery and armed violence against Daniel Nevels. On July 23, 1983, petitioner's counsel, Mr. Michael Cutrone, met with the assistant state's attorney, Ms. Bertina Lampkin, and the state trial judge in chambers. After the conference, the court and petitioner engaged in the following dialogue:

THE COURT: Mr. Potts, here is your situation. There is an agreement between the parties as to what would be proper sentence if you were found guilty of voluntary manslaughter.

There is a disagreement as to whether or not the evidence against you should result in the finding of guilty of murder or a finding of guilty of voluntary manslaughter.

The parties have entered into this agreement. They have agreed to submit the evidence to me against you in the main by stipulation. I think there is one witness the state is going to want to call and that after they have submitted the evidence to me, if I feel the evidence should warrant you guilty of manslaughter, voluntary manslaughter, you will be found guilty of voluntary manslaughter and you would be sentenced to the penitentiary for 12 years.

Do you understand that?

DEFENDANT POTTS: Yes, sir.

THE COURT: If I felt, after the stipulation, that the evidence should warrant a guilty of murder, I would declare a mistrial and send your case to another courtroom.

Do you understand that?

DEFENDANT POTTS: Yes, sir.

THE COURT: All right.

Now, they have pretty much told me what the evidence in the case is against you. And it is based upon an analysis of that evidence, I think that voluntary manslaughter finding would be appropriate. But I will still make an independent judgement [sic] on that evidence as it is submitted to me in open court.

You understand that?

DEFENDANT POTTS: Yes, sir.

THE COURT: Now, you are not pleading guilty, in effect you are having a bench trial and I am making a decision. There are elements of that that are resolved. But there are elements that are not. Because you are agreeing to proceed with the understanding that *the best thing that can happen to you is you're found guilty of manslaughter* and sentenced to jail for 12 years. So obviously, you're giving up a great deal *as you would be if you were pleading guilty.* You understand that?

DEFENDANT POTTS: Yes, I do.

THE COURT: Do you understand what you're charged with, sir?

DEFENDANT POTTS: Yes, sir.

THE COURT: Do you understand that on the charge that is contemplated you would be found guilty, the sentence range is a minimum of four to a maximum of 15 years in the pententiary [sic]. You understand that?

DEFENDANT POTTS: Yes, sir.

THE COURT: Do you understand further, sir, that you have a right to have an actual trial in the case and to force the state to put on their evidence and not to make any agreements beforehand that you're guilty of manslaughter. But just merely to stand on your guilty plea.

Do you understand you're giving that up by proceeding with this matter?

DEFENDANT POTTS: Yes, sir.

THE COURT: Do you understand, sir, that you also have a right to a trial by jury?

You understand that?

DEFENDANT POTTS: Yes, sir.

THE COURT: Obviously they wouldn't know anything about any such agreement that the state's attorney and your lawyer brought to me.

You understand what you are giving up, the right to a jury trial by proceeding even in this way?

DEFENDANT POTTS: Yes, I do.

THE COURT: *You are giving up your right to a full blown bench trial* where I would just come out and listen to the evidence as I am going to do to the other two and decide whether that evidence was sufficient or not.

Do you understand that you're giving that up?

DEFENDANT POTTS: Yes, I do.

THE COURT: One of two things is going to happen. I am going to find you guilty of voluntary manslaughter and send you to jail for 12 years or send your case to another courtroom.

You understand that?

DEFENDANT POTTS: Yes, sir.

THE COURT: Do you understand that in an actual trial you will truly be able to confront the witnesses against you. They have to testify under oath, not just by stipulation and they would be subjected to the cross examination of your lawyer.

Do you understand your [sic] are giving that up?

DEFENDANT POTTS: Yes, I do.

THE COURT: You understand *you are giving up the presumption of innocence* because what you're asking me to do in effect is to.

Do you understand you're giving up the presumption of innocence?

DEFENDANT POTTS: Yes, I do.

THE COURT: You understand you're giving up the right to remain silent by doing that?

DEFENDANT POTTS: Yes, sir.

THE COURT: Giving up the right to actually contest the facts fully and to present evidence in your own behalf.

Do you understand that?

DEFENDANT POTTS: Yes, I do.

THE COURT: You understand that at a trial the state has to prove you're guilty beyond a reasonable doubt.

DEFENDANT POTTS: Yes, sir.

THE COURT: And you are giving up an aspect of that protection by this agreement.

You understand that?

DEFENDANT POTTS: Yes, I do.

THE COURT: Have you, sir, entered into this agreement voluntarily and of your own free will?

DEFENDANT POTTS: Voluntarily.

THE COURT: All right.

It was your choice to do this. You may have been advised, but it was your choice to do this, is that correct?

DEFENDANT POTTS: Yes, sir.

THE COURT: Has there been any force or threats or promises other than the agreement to compel or make you proceed in this manner?

DEFENDANT POTTS: No, there haven't.

THE COURT: You may be seated, sir. Tr. 4–9 (emphasis added). The prosecution then proceeded with its case.

The state called Daniel Nevels as its only witness. The rest of the evidence was introduced by stipulation. That is, the prosecutor explained that, if the case went to trial, the state's witnesses would testify as follows: Assistant State Attorney Muharek would repeat his post-arrest conversations with Gavel and with petitioner; a number of police officers would describe what they saw when they arrived at the crime scene and searched the apartment; and other witnesses would discuss the physical evidence and the cause of death. This "evidence", though not entirely consistent, did paint a vivid picture of the circumstances leading to Miller's fatal injury.

On February 25, 1983, at around 7:00 p.m., petitioner was standing in the hallway outside Apartment 401 with Smith, Taylor, and Lester Hughes. The four listened as Eddie Coats explained that Miller, who was in Apartment 412 with Nevels and Gavel, had to be "whipped" because he had brought police attention to the building and had thus endangered the drug traffic there. When Coats finished, Smith and Taylor entered Apartment 412.

Smith immediately approached Miller and struck him while Taylor went to the kitchen, retrieved a biscuit pan, and prepared to join in the beating. Nevels, frightened for Miller, pulled out a shotgun and ordered Smith and Taylor to move away. At this point, Hughes emerged from the hallway, pointed a .380 caliber semi-automatic at Nevels and instructed him to put the shotgun down. When Nevels refused, the two exchanged shots: Nevels missed his target; Hughes did not. Nevels dropped the shotgun from his badly wounded arm and ran for the door, but before he exited another bullet caught him in the leg.

Nevels continued his flight, running across the hallway and down the building stairwell; Taylor, unarmed, pursued him. As they ran, both men passed petitioner standing alone between Apartments 402

and 412. A moment later, Gavel and Miller emerged from Apartment 412 struggling for the shotgun. Smith was close behind, and after briefly assisting Gavel in his efforts to take the gun from Miller, Smith pulled out the .38 caliber pistol and placed it against Miller's head. Petitioner grabbed the gun from Smith and watched (or assisted) as Smith, Gavel and the recently-returned Taylor fought Miller for the gun.

Eventually, Miller escaped and headed down the stairwell. Petitioner went to the stairwell, reached over, and when Miller reached the third floor landing, fired three shots at him with the .38 caliber pistol, hitting him at least once. At this point, Gavel and Smith grabbed petitioner and took him into Apartment 412, where they quickly hid the pistol. They left the building, but were soon arrested. When the police subsequently searched the apartment, they discovered the .38 caliber pistol hidden with the .380 caliber semi-automatic under a sofa and .380 caliber shell casings on the third and fourth floors of the building.

Later that day, Miller died. An autopsy revealed that he had suffered a total of five bullet wounds during the incident: one to the left upper back, one to the right back, one to the lower right back, one to the outer aspect of the left upper leg, and one to the medial aspect of the left upper leg. The wounds were caused by at least one shot from the .380 caliber semi-automatic and at least two from the .38 caliber pistol. The cause of death was "multiple gunshot wounds"—a perforated wound of the chest and heart and a perforated wound of the left kidney, lung and heart.

After the state rested, the trial judge asked petitioner's counsel if he had any evidence he wished to produce. Counsel replied that he did not, and waived closing argument. The court then ruled as follows:

The agreement at this time calls upon the court to determine—well, actually three things. I think that it should be reflected that although the agreement was the decision as to whether or not the evidence warranted a finding of guilty of murder or of voluntary manslaughter. In my mind, at least I reserve the right to evaluate whether the evidence established guilt at all, I think that this is a case that is close between murder and voluntary manslaughter.

I think that in those cases the law requires the judge or the finder of facts to give the accused the benefit of the evidence that would most favor the lessor [sic] charge.

In this case arguably there was a sudden and intense passion that resulted in the shooting more persausively [sic] however the position could be maintained that the defendant at the time he fired the shots that contributed to the death of the deceased was under the unreasonable belief that his conduct was justified.

That based upon an evaluation of the whole incident itself, I think therefore the defendant while clearly proven guilty of a homicide is entitled to the benefit of the most favorable consideration of the evidence and there would be a finding of guilty of voluntary manslaughter and there will be a judgment on that finding. Now, as to the periferal [sic] charges off of the murder. The armed violence, there will be a finding of not guilty. In my mind he was charged with armed violence based on murder, voluntary manslaughter is not pleaded. He has by the conviction of voluntary manslaughter been acquitted of murder so there would be a finding of not guilty of the charged violence based upon the murder.

The unlawful restraint will merge with the finding of guilty of voluntary manslaughter.

The armed violence based upon the unlawful restraint is an improper double enhancement. There would be a finding of not guilty as to that charge.

As to the crimes against Daniel Nevels, it is clear that Mr. Potts entry into the affair occurred after the Nevels incident. There will be a finding of not guilty of the three charges in which Daniel Nevels is named as the victim, the two aggravated batteries and one armed violence.

At this time, I would note that my finding of guilty of voluntary manslaughter would activate the earlier agreement as to the sentence. I feel that the state is bound to that agreement and we would be able now to proceed with a hearing in aggravation and mitigation.

Ms. Lampkin, if you would please file with the court the current Bureau of Identification Criminal History and make any other statement you wish in aggravation.

MS. LAMPKIN: Your Honor, I would rely on the information brought to the court's attention during the pretrial conference.

I would indicate for the record that the defendant has a prior conviction under Information No. 79–17992 for burglary. He received two years felony probation with 17 days in from his Honor Judge Moran.

Case No. 81–8076 on a possession of controlled substance he received a sentence of three years.

THE COURT: Mr. Cutrone.

MR. CUTRONE: Judge, with respect to the case I would also rely on the matters that were related to your Honor during the conference on this matter.

I would ask your Honor to abide by the agreement that was reached as between the parties and to sentence Mr. Potts to a period of 12 years concurrent with the sentence he received on the other charges.

THE COURT: Mr. Potts, do you have anything you wish to say prior to sentencing?

DEFENDANT POTTS: No, sir.

THE COURT: I would note in imposing the sentence in this case I consider both the nature and circumstances of the offense and the character and background of this particular defendant.

Mr. Potts, I think it's very important to you for you to understand how factually close this case was to murder.

DEFENDANT POTTS: Yes, sir.

THE COURT: I have no problem with the decision I made and it is a decision. I listened to the evidence and it is based upon the evidence I heard, considering only your statement against you and the other evidence indicates, the stipulated evidence, I have no problem with this. How old are you?

DEFENDANT POTTS: 25.

THE COURT: You are a young man yourself. Hope you can serve this sentence and somewhere along the line have a decent life.

For the reasons heretofore stated on the charge of voluntary manslaughter, the defendant will be sentenced to 12 years in the Illinois Department of Corrections in accordance with the pretrial agreement.

Tr. 49–53. The judge found the two co-defendants not guilty on all charges.

Within thirty days of the ruling, petitioner filed with the trial court a pro se motion to withdraw his guilty plea. At a subsequent hearing, the court appointed another lawyer to represent petitioner on his motion, and explained that although petitioner had styled the motion as one to withdraw a plea:

Mr. Potts did not plead guilty to this charge, at least not technically. This was a stipulated bench trial in which the Defendant had been admonished as if it was a plea of guilty. But it was not actually a plea of guilty. And I'm going to treat the Defendant's motion, not as one to withdraw a guilty plea but as one for a new trial. But I will apply the same standard that, to that motion as I would to a motion to withdraw plea of guilty.

Tr. 66. The court then ruled as follows:

Mr. Potts had been charged with murder. His Counsel repeatedly at his request, sought conferences with the Court in an effort to have the charge of murder reduced from one of murder to manslaughter. After a review of the evidence in the conference, the State indicated its feelings that if the Defendant was to be convicted of voluntary manslaughter, they would have no objection to the sentence of twelve years and would agree to that sentence. They were not, however, in a position to reduce the case and it

was their desire if the case went to trial to proceed on the charge of murder.

After listening to the presentation of evidence at the conference, I concluded that there was a factual justification for finding the Defendant guilty of voluntary manslaughter and was willing if the parties wished to agree to a stipulation of facts so that was consistent with what they told me at the conference to enter that finding at a bench trial. The Defendant was first admonished by his attorney as to this agreement and then he was further admonished as to the agreement in open Court.

The Defendant sought and received the benefit of the bargain and he now complains apparently that he is not satisfied with that bargain. He states in his affidavit, first, that he was advised by his attorney that if he went to trial and was convicted he would be sentenced to a more severe term of imprisonment. That statement is obviously a correct statement in that the Defendant was charged with murder. If he had gone to trial if a jury convicted him of murder, the Statutory minimum available to the Court would have been twenty years in the penitentiary. Thereafter, he suggests that the evidence is insufficient upon which to base the finding.

I disagree with him. I gave him the benefit of that which he asked. He accepted it and I think that for him now to question it is not proper. I believe that the evidence warranted a finding that the Court made and I will not at this point find differently. The Motion for new trial and motion to vacate the sentence is denied and the Defendant is recommitted to the Illinois Department of Corrections pursuant to the original sentence.

Tr. 68–69.

Petitioner, represented by newly appointed counsel, appealed to the Illinois Appellate Court. His brief on appeal reflected the ambiguity in the trial court record as to whether plaintiff had pleaded guilty to voluntary manslaughter or, instead, had been convicted on the basis of the stipulated evidence presented to that court.

Petitioner's first argument treated the trial court proceedings as a stipulated bench trial, and sought reversal of the guilty verdict on the grounds that the evidence was insufficient to prove his guilt beyond a reasonable doubt. Petitioner conceded that he had fired the .38 caliber pistol at Miller, that at least two of Miller's five bullet wounds had come from this weapon, and that two of the five had caused the death. Petitioner noted, however, that at least one, and as many as three, of the wounds had been caused by the .380 caliber semi-automatic and that there was nothing in the record to establish the caliber of the two bullets responsible for the death.

Petitioner's second argument addressed the possibility that the appellate court would view his conversation with the trial court as a guilty plea to voluntary manslaughter, and hence a waiver of his right to contest factual guilt on appeal. Pointing to the absence in the trial court record of any reference to the causation issue, petitioner argued that trial counsel had provided petitioner with ineffective legal assistance and that any waiver of his right to trial was involuntary.

The state's response to the insufficiency of the evidence claim did not dispute petitioner's position on the causation issue. Instead, the state argued that it was irrelevant whether petitioner's shots had caused Miller's death because the evidence was sufficient to find petitioner guilty of voluntary manslaughter under a theory of accountability:

> In the case at bar, it is uncontroverted that defendant took part in the deadly assault upon Jerome Miller.... Although the identity of the second killer was not disclosed at trial it is uncontroverted that the ... bullets found in the victim were from a .38 Colt special used by defendant, and a .380 semi-automatic. Both of these weapons were found hidden under the couch in the apartment where the altercation began and therefore may properly be deemed to be under the control of the group of which defendant was a part. Further, there were

numerous shell casings from the .380 caliber semi-automatic found at the stairway where the shooting occurred. From this fact it is permissible to draw the inference that there were two people shooting at Jerome Miller as he fled down the stairs. Where two people take part in the furtherance of a crime each is held accountable for the actions of the other. *People v. Mueller*, [Muellner], *70 Ill.App.3d 671, 681–82 [26 Ill.Dec. 850, 388 N.E.2d 851] (1979).*

Brief of Plaintiff–Appellee at 8.

The state relied on the accountability theory in its response to the ineffective assistance claim as well. Because petitioner's guilt under this theory was overwhelming, the state argued, trial counsel's failure to pursue the causation issue was a reasonable tactical decision and, in any case, could not have affected the trial court's ruling. Moreover, the state continued, petitioner faced a murder charge but was allowed to plead guilty to voluntary manslaughter, and in light of the overwhelming evidence against him, this plea was both intelligent and voluntary.

In his reply brief, petitioner pointed to three weaknesses in the state's argument: first, a conviction under a theory of accountability requires proof of intent to participate with another in a crime; second, the state had not even hinted in the trial court that petitioner may have joined with someone in the fatal shooting; and third, the trial court had not rested its verdict on this theory.

The appellate court affirmed. *People v. Potts*, Rule 23 Order (Ill.App. 1 1984). Without any mention of the ambiguity in the trial court record, it treated the proceedings below as a stipulated bench trial resulting in a finding of guilt beyond a reasonable doubt. It then ruled that there was sufficient evidence to support the guilty verdict.

In its ruling, the court stated that the prosecution's failure to charge accountability at trial did not preclude the state from raising it on appeal. The court then continued:

The intent to promote or facilitate a crime may be shown by evidence that the defendant shared the criminal intent of the principal or by the evidence that there was a community of unlawful purpose. Community of unlawful purpose may be proved by evidence of prior deliberation to commit the offense or by spontaneous and combined participation of a group in the perpetration of the offense. A conviction of manslaughter based upon a theory of accountability will be upheld where more than one person engages in an assault and the accused by his participation encourages the perpetration of the offense. The act of one participant in an assault is the act of all participants. Accordingly, the evidence of defendant's participation in the assault of deceased was sufficient to prove him guilty beyond a reasonable doubt.

*Id.* at 6–7 (citations omitted). The court summarily rejected petitioner's ineffective assistance of counsel claim, reasoning that his guilt under an accountability theory obviated the argument that "had his trial court raised the [causation] issue he could possibly have been acquitted." *Id.* at 7.

After the Illinois Supreme Court refused further review, petitioner moved this court for a writ of habeas corpus on the same two grounds he had presented on direct appeal. As noted earlier, this court subsequently appointed counsel for petitioner, but the appointed attorney informed the court that he found the petition frivolous and therefore would not file a supporting brief. Accordingly, the petition is ripe for ruling.

## DISCUSSION

The history of this case to date reveals a shocking pattern of legal error and professional irresponsibility at every level and (with the notable exception of state appellate counsel) by everyone who touched it. From lawyer to lawyer, and court to court, he has been treated as if the fact that he clearly violated some law when he fired the .38 caliber pistol at Miller justifies a reduced level of concern with his constitutional rights. It does not.

Petitioner had the right to an attorney who would explore and assert all legitimate defenses to the charges against him. He had the right to a trial on these charges, unless he knowingly and voluntarily chose to plead guilty. He had the right to know the reason for the judgment against him, and a right to appellate review of the judgment. Finally, he had the right to competent legal representation once counsel was appointed by this court. Each of these rights he has been denied.

*The Guilty Plea*

The problems begin with the colloquy in the trial court. Petitioner's confusion regarding whether that discussion resulted in a guilty plea or, instead, in a stipulated bench trial comes as no surprise. The trial court was not sure; petitioner's attorneys were not sure; the state's attorney was not sure; and the Illinois Appellate Court simply ignored the issue.

The Seventh Circuit has said that ordinarily a defendant's agreement to a stipulated bench trial is not tantamount to a guilty plea and does not entitle him to the full protections afforded defendants pleading guilty. *United States v. Schmidt,* 760 F.2d 828, 834–35 (7th Cir.), *cert. denied,* 474 U.S. 827, 106 S.Ct. 86, 88 L.Ed.2d 71 (1985). The reason for the rule lies in the unique nature of the guilty plea. *United States v. Robertson,* 698 F.2d 703, 707 (5th Cir.1983). Whereas a stipulation admits facts and also waives certain constitutional rights, such as the right to confront witnesses, " '[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.' " *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–12, 23 L.Ed.2d 274 (1969). Unlike a defendant stipulating to facts, a pleading defendant waives all non-jurisdictional error. *United States v. Robertson,* 698 F.2d at 707; *United States v. Briscoe,* 428 F.2d 954, 956 (8th Cir.) *cert. denied,* 400 U.S. 966, 91 S.Ct. 378, 27 L.Ed.2d 386 (1970). While a defendant cannot help but recognize the rights implicitly waived by a stipulation, he may well not understand the full scope of the waiver occasioned by a plea. Therefore, only a guilty plea requires strict prophylactic rules to ensure that the defendant understands the ramifications of his decision. *See Boykin v. Alabama,* 395 U.S. at 242–43, 89 S.Ct. at 1711–12; *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969); *United States v. Robertson,* 698 F.2d at 707; *see also United States v. Fisher,* 772 F.2d 371 (7th Cir.1985) (although Fed.R.Cr.P. 11(a)(2) allows for conditional guilty pleas with consent of the court and the government, there is no right to a conditional plea).

■ This rationale for distinguishing between the treatment of stipulations and pleas led the Seventh Circuit in *Schmidt* to recognize that guilty plea safeguards may be required where "by stipulation or otherwise a defendant effectively admit[s] his guilt and waive[s] trial on all issues." *United States v. Schmidt,* 760 F.2d at 834 (*quoting United States v. Lawson,* 682 F.2d 1012, 1015 (D.C.Cir.1982)); *United States v. Brown,* 428 F.2d 1100 (D.C.Cir. 1970). In cases where the defendant stipulates to factual as well as legal guilt, he waives all of the rights that he waives by pleading guilty, and thus must be given the protections afforded defendants who plead. Although the Seventh Circuit did not unequivocally adopt this approach in *Schmidt,* the wisdom of it is manifest.

■ This case illustrates. Petitioner did not explicitly plead guilty to voluntary manslaughter, but he stipulated to a bench trial in which, at best, the court would find him guilty of this crime. Petitioner thus waived not only the right to contest the facts, but also the right to challenge the inferences to be drawn from those facts, the application of the facts to the relevant law, and the right to a finding of guilt beyond a reasonable doubt.

The fact that, after the trial, the trial court and the appellate court treated the proceedings as a stipulated bench trial rather than a guilty plea does not change the ramifications of petitioner's plea. While the conversion allowed petitioner to appeal his conviction on sufficiency of the

evidence grounds, it could not remedy the impact of his plea on his presentation to the trial court. Believing that petitioner had pleaded guilty to voluntary manslaughter, and not wanting to upset the pre-trial agreement, trial counsel offered no evidence in defense and made no closing argument on petitioner's behalf. He did not put the prosecution to its proof, or inquire into the causal connection between petitioner's shots and Miller's death. He treated the state's presentation of an account of the crime just as counsel representing defendants in federal court treat the prosecution's recital of the facts underlying the charge when setting forth the factual basis for a plea. *See* Fed.R.Cr.P. 11(f) and advisory notes; *United States v. Ray,* 828 F.2d 399, 406–07 (7th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988). In short, petitioner and his counsel viewed the pre-trial colloquy as a guilty plea. This court does as well.

Once it is established that petitioner's stipulations amounted to a guilty plea, the defect in the trial court's procedures for accepting the plea becomes evident. In *Boykin,* the Supreme Court ruled that a valid guilty plea requires "an affirmative showing that it was intelligent and voluntary." 395 U.S. at 242, 89 S.Ct. at 1711. To satisfy this requirement, "the defendant [must] possess[ ] an understanding of the law in relation to the facts." *Johnson v. Zerbst,* 304 U.S. 458, 466, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938); *see also* Fed.R. Cr.P., Rules 11(c)(1) [1], (f) [2]. In *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court explained:

> [I]f a defendant's guilty plea is not equally voluntary and knowing, it has been

obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.... Requiring [an] examination of the relation between the law and the acts the defendant admits having committed is designed to "protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge."

*Id.* at 466–67, 89 S.Ct. at 1171 (*quoting* Fed.R.Cr.P., Notes of Advisory Committee of Criminal Rules).

The trial court here informed petitioner of the sentence he faced by pleading guilty to voluntary manslaughter, recited for him the rights he was waiving, and questioned him on whether he had been coerced into entering the plea. *See McMann v. Richardson,* 397 U.S. 759, 773, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970). The court made no effort, however, to determine whether defendant understood the nature of the voluntary manslaughter charge—a charge not contained in the indictment (*compare Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983))— so as to ensure that defendant was voluntarily admitting guilt of that crime.

Respondent argues that, notwithstanding this omission, petitioner's plea was knowing and voluntary as a matter of law because there was "overwhelming" evidence that defendant was guilty under a theory of accountability. Trial counsel's advice to

---

**1.** Rule 11(c)(1) of the Federal Rules of Criminal Procedure provides:

> **(c) Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term

and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; ....

**2.** Rule 11(f) of the Federal rules of Criminal Procedure provides:

> **(f) Determining Accuracy of Plea.** Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

petitioner that he enter into the plea, respondent maintains, was a tactical decision to avoid a murder conviction, and obviates petitioner's right to challenge the plea.

A number of Supreme Court cases lend credence to this position. In *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court stated that:

> Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. [at 771, 90 S.Ct. at 1449]. As we explained in *Tollett v. Henderson*, 411 U.S. 258 [93 S.Ct. 1602, 36 L.Ed.2d 235] (1973), a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*." *Id.* at 267 [93 S.Ct. at 1608].

*Hill v. Lockhart*, 474 U.S. at 56–57, 106 S.Ct. at 369. This statement in *Hill* suggests that, in addition to showing that the trial court failed to establish on the record the knowing and voluntary nature of the plea, petitioner must also show that he received ineffective assistance of counsel under the bifurcated test of *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) (in order to succeed on Sixth Amendment claim, petitioner must show *both* that his counsel's performance was deficient *and* that the deficiency was prejudicial).

■ Later, the court will address the effectiveness of the representation petitioner received from trial counsel. But because, as explained below, *Lockhart* does not apply to the plea in this case, the court need not resolve the Sixth Amendment issue in order to rule on the validity of petitioner's plea: Irrespective of whether petitioner received effective legal assistance, the failure of the trial court to ensure petitioner's knowledge of the nature of the crime to which he was pleading requires

that the plea be set aside, and the conviction vacated.

*Lockhart, Tollett,* and the *Brady* trilogy (*Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970))—the five cases in which the Supreme Court has held that a petitioner may only attack a guilty plea by showing that he received ineffective legal assistance—each involved habeas claims very different than petitioner's challenge here.

In *Lockhart*, defendant claimed that his plea was involuntary because his attorney had misinformed him about the date he would become eligible for parole. The Court rejected his petition on the grounds that the petitioner had failed to establish that the misinformation, if given, amounted to ineffective assistance. *Hill v. Lockhart*, 474 U.S. at 60, 106 S.Ct. at 371. The Court specifically noted, however, that the petitioner did not claim that he had a constitutional right to know his parole release date; the petitioner based his argument that his plea was involuntary solely on counsel's erroneous advice. Thus, unlike petitioner here, who claims that his plea was constitutionally infirm because he did not know an essential element of the charge against him, *see People v. Love*, 71 Ill.2d 74, 15 Ill.Dec. 628, 373 N.E.2d 1312 (1978) (causation is an essential element of manslaughter), the petitioner in *Lockhart* predicated his petition on inadequate knowledge of information to which he had no constitutional right; without proof of ineffective representation, the *Lockhart* petition simply did not raise a constitutional claim.

*Tollett* and the *Brady* trilogy did involve constitutional claims. In each case, the petitioner claimed that his plea was involuntary because he been deprived of some constitutional right prior to pleading guilty, and because if he had known of the constitutional violation he would not have so pleaded. *Tollett v. Henderson*, 411 U.S. at 261–66, 93 S.Ct. at 1605–08 (1973) (claiming unconstitutionally selected grand jury); *see*

*also, e.g., McMann v. Richardson,* 397 U.S. at 759, 90 S.Ct. at 1441 (claiming coerced confession). In *Tollett,* the Court explained the principle established in the trilogy:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the plea by showing that the [legal] advice he received was not [constitutionally sufficient].

*Tollett v. Henderson,* 411 U.S. at 267, 93 S.Ct. at 1608.

*Tollett* and its precedents, though closer than *Lockhart,* still differ from the situation here. Petitioner does not assert that he was deprived of constitutional rights prior to "admitt[ing] ... that he is in fact guilty of the offense with which he is charged." Instead, he claims that he did not effectively admit guilt at all, because he did not know the elements of the crime to which he was pleading.

In *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court ruled that the habeas petitioner's guilty plea to second-degree murder could not stand where there was no indication on the state court record that petitioner understood that intent to cause death was an element of the crime. The court assumed that their was "overwhelming evidence of guilt available." *Id.* at 644, 96 S.Ct. at 2257. It also accepted the State's "characterization of the competence of [the petitioner's] counsel and of the wisdom of their advice to plead guilty to a charge of second-degree murder." *Id.* Nevertheless, because the petitioner's admission that he had killed the victim did not necessarily mean that he had intended to kill her, *id.* at 646, 96 S.Ct. at 2258, and because he did not understand that he was admitting to having intended to do so, *id.* at 647, 96 S.Ct. at 2258, the guilty plea was unknowing and involuntary.

*Henderson* teaches that the *Tollett* principle does not apply where the defendant has pleaded guilty without adequate notice of, and admission to, the elements of the charges against him.[3] Indeed, the *Henderson* opinion does not cite any of the four earlier cases discussed above. And even the dissenting opinion of now-Chief Justice Rehnquist—who authored *Tollett* before and *Lockhart* later—opines that where a defendant has not been informed of an element of the crime to which he has pleaded guilty, the Court must examine the "totality of the circumstances"—advice of counsel being only one factor—in determining whether the plea was knowing and voluntary. *Id.* at 658, 96 S.Ct. at 2264 (Rehnquist, J., dissenting); *see also Marshall v. Lonberger,* 459 U.S. at 436, 103 S.Ct. at 852 (1983) (Rhenquist, J.).[4]

Thus, assuming arguendo that petitioner's trial counsel made a reasonable tactical decision to advise him to plead guilty, this constitutionally adequate legal representation does not insulate the plea from petitioner's challenge. Instead, the court must determine whether, given adequate legal advice, petitioner knowingly and voluntarily pleaded guilty to voluntary manslaughter. In *Henderson,* the Supreme Court

---

3. *See also Menna v. New York,* 423 U.S. 61, 62 n. 1, 96 S.Ct. 241, 242 n. 1, 46 L.Ed.2d 195 (1975) (per curiam) ("Neither [*Tollett*] nor the cases on which it relied, *e.g.,* [*Brady*] and [*McMann*], stand for the proposition that counseled guilty pleas inevitably waive all antecedent constitutional violations. The point of these cases is that a counseled guilty plea is an admission of factual guilt so reliable that, *where voluntary and intelligent,* it quite validly removes the issue of factual guilt from the case.") (Emphasis added).

4. *Compare United States v. Miller,* 800 F.2d 129 (7th Cir.1986) (employing *Henderson* test that plea was involuntary because petitioner did not understand all of the elements of the crime) *and United States v. Frye,* 738 F.2d 196 (7th Cir.1984) (same) *with Gargano v. United States,* 852 F.2d 886 (7th Cir.1988) (applying *Lockhart* test where petitioner claimed that counsel failed to properly inform him of, and challenge, his exposure to harsh sentences) *and Key v. United States,* 806 F.2d 133 (7th Cir.1986) (same).

specifically noted that, before granting the writ, the district court had held an evidentiary hearing on the voluntariness of the plea and had found as fact that the petitioner had not been advised at any time that intent to cause death was an essential element of second degree murder. 426 U.S. at 640, 96 S.Ct. at 2255. Such an evidentiary hearing is not, however, necessary here.[5] *See generally* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8 (Advisory Committee Notes) ("[I]n unusual cases, the court may grant the relief sought without a hearing.").

Petitioner has maintained since shortly after his "conviction" in the state trial court that he wanted to withdraw his guilty plea. He has repeatedly claimed, and does to this court, that he would not have pleaded guilty had he understood that, without any evidence that he had caused Miller's death, he could not have been convicted of either murder or manslaughter. Respondent does not contend that he has any additional evidence as to the cause of Miller's death, or that petitioner knew the elements of voluntary manslaughter. The only factual issue respondent places in dispute is whether petitioner understood that he could be convicted of murder or manslaughter on an accountability theory and pleaded guilty to avoid that risk.

Under Illinois law, the elements of a homicide under a theory of accountability differ fundamentally from the elements of this crime as a principal. *People v. Calhoun*, 144 Ill.App.3d 829, 831–32, 98 Ill. Dec. 376, 494 N.E.2d 498 (1986) ("[I]n order for the State to show that [defendant] was accountable for [another's] acts, it would need to show that [the two] shared a common plan to achieve a common goal in a 'community of unlawful purpose.'") (*Quoting People v. Patterson*, 102 Ill.App. 3d 844, 850, 58 Ill.Dec. 542, 430 N.E.2d 574 (1981)). Respondent never mentioned in

the indictment or before the trial court that accountability was a theory of guilt, and the trial court's "ruling" makes clear that the judge had not considered this theory in accepting the plea. Thus, whatever petitioner's knowledge about the possibility of a conviction as an accomplice, it is clear that he pleaded guilty to voluntary manslaughter as a principal.

In *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Court upheld the defendant's guilty plea to second-degree murder despite his protestations of innocence at the time he pleaded, because he had pleaded guilty to the crime in order to avoid a trial for first-degree murder and the possibility of the death penalty. Critical to this ruling was the defendant's knowledge of the elements of *both* crimes, and the strong factual basis for the plea in the trial court record. *Id.* at 37, 91 S.Ct. at 167.

Here, by contrast, petitioner did not know all of the elements of the crime to which he pleaded, and the record contains no factual basis to support his guilt of that crime. Even were this court to find as a matter of fact that petitioner understood the possibility that he would be convicted of murder under an accountability theory, the court could not rule as a matter of law that his plea to guilt as a principal "represent[ed] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 31, 91 S.Ct. at 164; *cf. Dunn v. United States*, 442 U.S. 100, 106–07, 99 S.Ct. 2190, 2194–95, 60 L.Ed.2d 743 (1979) ("To uphold a conviction on a charge that was neither alleged in an indictment nor presented to the jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established that a defendant's right to be heard on the specific charges of which he is accused.").

To summarize, then, the court finds that the pre-trial colloquy between the state tri-

---

5. Both the state trial court and the appellate court refused to view the pre-trial dialogue as a plea, and thus made no factual findings bearing on whether the plea was knowing and voluntary. *See Marshall v. Lonberger*, 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). The pre-

sumption of correctness that federal habeas courts must give to state court findings of fact therefore does not apply. 28 U.S.C. § 2254(d)(1); *see also Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

al court and petitioner amounted to a guilty plea and that, accordingly, petitioner was entitled to the protections afforded defendants pleading guilty. Because the trial court did not adequately provide those protections, and because petitioner did not know and admit all of the elements of the crime to which he pleaded, his guilty plea was not knowing and voluntary. A writ of habeas corpus rendering the conviction void will issue.

*The Bench Trial*

Although the court has thus far treated the stipulations in the state trial court as tantamount to a guilty plea, the Seventh Circuit's failure to expressly countenance such an approach, and the Illinois Appellate Court's view of the proceedings as a stipulated bench trial, make it appropriate (if not mandatory) to examine the proceedings in this light as well. *See United States v. Schmidt,* 760 F.2d at 834 (reviewing record of stipulated bench trial for sufficient evidence of guilt). As shall be seen, the result does not change.

Respondent presents two arguments in opposition to petitioner's insufficiency of the evidence claim. He first contends that petitioner's failure on direct appeal to frame this argument as a federal constitutional claim bars him from raising the issue now. This court's ruling in *United States ex rel. McNeal v. O'Leary,* 1988 U.S.Dist. Lexis 5771 (June 8, 1988) [1988 WL 64172] is dispositive:

> The Seventh Circuit has indicated that when the state court was bound to have recognized that an appellant's ground for appeal implicated a federal constitutional right, the fact that the appellant did not frame it as such does not bar a district court from reaching the merits of the claim on a petition for habeas relief. *See Varnell v. Young,* [839 F.2d 1245 (7th Cir.1988)]; *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 453–55 (7th Cir.1984). Since the Illinois appellate court is undoubtedly aware that the federal constitution requires guilt beyond a reasonable doubt in a criminal trial,

petitioners' failure to say as much does not constitute a forfeiture of this issue. *Id.* at 2–3.

■ Respondent's second argument is that there is sufficient evidence in the trial court record to support the guilty verdict. To convict an individual of voluntary manslaughter, the trier of fact must find beyond a reasonable doubt that he, or someone with whom he acted in concert, caused the death. *People v. Love,* 71 Ill.2d 74, 15 Ill.Dec. 628, 373 N.E.2d 1312 (1978); *People v. Calhoun,* 144 Ill.App.3d 829, 98 Ill. Dec. 376, 494 N.E.2d 498 (1986); *see In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). When reviewing such a conviction on a habeas petition, however, the only issue is whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979).

Petitioner argues correctly that the evidence was insufficient to find that he caused Miller's death. Not one shred of evidence presented to the trial court justified an inference that the .38 caliber bullets were responsible for the bullet wounds to the chest. Nor did any evidence suggest that the leg wounds contributed to the death.

In *Calhoun,* the defendant was charged with murdering Jimmy Jackson by stabbing him in the back and neck during an armed robbery. At trial, the defendant's lawyer admitted that the defendant had robbed and stabbed Jackson, but argued that the defendant was not guilty of murder because another victim of the robbery, Joyce Jackson, had inflicted the fatal neck wounds after the defendant had left the scene. The jury found the defendant guilty of murder.

The defendant appealed on the grounds that he had been deprived of adequate legal assistance because his attorney had effectively admitted guilt to the jury. The appellate court disagreed, noting that counsel had admitted that the defendant had stabbed and robbed the deceased only to bolster the credibility of the argument that

the defendant had not inflicted the fatal neck wounds. If the jury had found that the latter wounds were an independent cause of the death, then the jury would have had to acquit. *People v. Calhoun*, 144 Ill.App.3d at 831–32, 98 Ill.Dec. 376, 494 N.E.2d 498.

*Calhoun* informs the analysis here. Because the prosecution failed to establish that petitioner's shots, as opposed to those from the .380 caliber weapon, contributed to Miller's death, no rational trier of fact could have convicted him for voluntary manslaughter as a principal.

The state did not dispute this fact on direct appeal. In his memorandum to this court, however, respondent appears to argue that there was sufficient evidence to convict petitioner as a principal. Yet, he does not even attempt to support this argument with facts from the record, and to the extent he stands on this argument, he is plainly wrong.

Like the state on appeal, respondent's primary argument here is that there was sufficient evidence in the record to find that petitioner had participated with someone else in shooting at Miller, and accordingly, that petitioner was guilty under an accountability theory. As described earlier, the Illinois Appellate Court agreed with the state on this score. This ruling demonstrates a disturbing misapprehension regarding the proper role of an appellate court.

■ The appellate court stated that it could affirm the conviction on the accountability theory because "it is always proper to charge one as a principal even though the proof is that he is an accessory who aided or abetted the commission of the crime." *People v. Potts*, Rule 23 Order at 7. In *Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), the Supreme Court explained the defect in this reasoning in reversing the Tenth Circuit's affirmance of a perjury conviction:

> [W]hile there was no variance between the indictment and proof at trial, there was a discrepancy between the basis on which the jury rendered its verdict and that on which the Court of Appeals sus-

tained petitioner's conviction. Whereas the jury was instructed to rest its decision on Dunn's September statements, the Tenth Circuit predicated its affirmance on petitioner's October statement.

\* \* \* \* \* \*

> To uphold a conviction on a charge that was [not] … presented to the jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused.… The jury might well have reached the same verdict had the prosecution built its case on petitioner's October 21 testimony adopting his September 30 statement rather than on the September statement itself. But the offense was not so defined and appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial.

*Id.* at 106–07, 99 S.Ct. at 2194; *Chiarella v. United States*, 445 U.S. 222, 236, 100 S.Ct. 1108, 1119, 63 L.Ed.2d 348 (1980) ("[W]e cannot affirm a criminal conviction on the basis of a theory not presented to the jury."); *Cola v. Reardon*, 787 F.2d 681 (1st Cir.), *cert. denied*, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986) (granting writ of habeas corpus where state appellate court affirmed conviction on evidence and theory not presented as such at trial).

Respondent cites *People v. Williams*, 28 Ill.App.3d 402, 328 N.E.2d 682 (1975), to support the ruling of the appellate court here that, in reviewing petitioner's conviction as a principal, it could affirm on the theory that he was accountable as an accessory. In *Williams*, the defendant was charged with burglarizing a food market. The government's key witness testified that the defendant had thrown a brick through a window but that he, the witness, had entered the building and taken the goods. Because the crime of burglary requires an "entry," the prosecution had argued to the jury that, although the defendant had never been inside the building, the fact that he had thrown a brick through the

window was sufficient. *Id.* at 403–04, 328 N.E.2d 682.

The appellate court disagreed, holding that "[d]efendant's use of the brick only to break the window was not an 'entry.'" *Id.* at 403, 328 N.E.2d 682. Nevertheless, the court affirmed the conviction on the grounds that there was overwhelming evidence that the defendant had participated with the witness in the crime and was therefore "guilty of burglary on the theory of accountability." *Id.* at 404, 328 N.E.2d 682. In essence, the appellate court found that the prosecution's erroneous theory of guilt—i.e., defendant's conviction on a theory unsupported by the evidence—was harmless error.

*Dunn* makes clear that it was not. The harmless-error doctrine allows an appellate court to affirm a verdict in the face of constitutional errors that are "harmless beyond a reasonable doubt." *United States ex rel. Savory v. Lane,* 832 F.2d 1011 (7th Cir.1987). Where the jury has convicted the defendant of a crime, a court may affirm "if the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict." *Satterwhite v. Texas,* — U.S. —, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Although the Supreme "Court's willingness to invoke the harmless-error doctrine has expanded dramatically in recent years," *United States v. Lane,* 474 U.S. 438, 473, 106 S.Ct. 725, 744, 88 L.Ed.2d 814 (1986) (Stevens, J., dissenting), the Court has never said, and never will, that an appellate court can engage in its own factfinding mission in affirming a conviction for a crime of which a defendant was not charged and on which he was not tried. *See Dunn v. United States,* 442 U.S. at 106–07, 99 S.Ct. at 2194–95; *Satterwhite v. Texas,* 108 S.Ct. at 1797 ("Some constitu-

tional violations … can never be considered harmless."); *see also State v. Schmidt,* 110 N.J. 258, 540 A.2d 1256 (1988) (reversing appellate court affirmance of conviction for possession of narcotics where appellate court affirmed on theory of vicarious liability not presented to the jury).

The appellate court's ruling here is similarly flawed. The trial court record contains not a single reference to an accountability theory. The state's evidence and argument to that court, and the court's explanation of its ruling, all make abundantly clear that petitioner was tried and convicted as a principal. Thus, it matters not whether there was sufficient (or overwhelming) evidence on the trial record to convict him under an accountability theory. By affirming the conviction on this basis, the appellate court violated petitioner's rights to due process and to a trial on the crimes with which he is charged.[6]

 Respondent attempts to avoid the consequences of this error by arguing that the appellate court not only found sufficient evidence to affirm the conviction, but also affirmatively found petitioner guilty of voluntary manslaughter under a theory of accountability. He insists that the Supreme Court's extension of 28 U.S.C. § 2254(d) to the factual findings of state appellate courts, *Sumner v. Mata,* 449 U.S. 539, 545–46, 101 S.Ct. 764, 768–69, 66 L.Ed. 2d 722 (1981), requires this court to defer to the Illinois Appellate Court's factual findings.

Had petitioner been tried in an ordinary bench or jury trial, the flaw in this argument would be obvious. While state appellate courts can make findings of fact on questions regarding the admissibility of evidence, *e.g., Sumner v. Mata, supra,* or the validity of guilty pleas and sentences, *see Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Burns v.*

---

**6.** Both sufficiency of the evidence and harmless error analysis are legal inquiries "requiring plenary federal review." *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1986); *see United States v. Lane,* 474 U.S. at 445, 106 S.Ct. at 730 (harmless error); *Branion v. Gramly,* 855 F.2d 1256 (7th Cir.1988) (sufficiency of

evidence). Thus, insofar as the appellate court ruled that there was sufficient evidence to convict petitioner, or that the failure to try him as a principal constituted harmless error, that ruling does not receive the presumption of correctness accorded state court factual findings. *See* 28 U.S.C. § 2254(d).

*Clusen,* 798 F.2d 931 (7th Cir.1986), the right to have the ultimate determination of guilt or innocence determined at trial lies at the core of the Fifth and Sixth Amendments. *See United States v. Oregon Medical Society,* 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952) ("Face to face with living witnesses, the original trier of fact holds a position of advantage from which the appellate judges are excluded.") (Citation omitted).

Yet, the bench trial here presents an unusual case. Since all of the relevant evidence entered the record by stipulation, the appellate court was arguably as capable as the trial judge of drawing inferences from it and rendering a verdict. Two problems remain, however, in respondent's argument here.

First, it is not at all clear that the Illinois Appellate Court actually found petitioner guilty under a theory of accountability. To be sure, the court did state at one point that it agreed with the "State's position ... that [petitioner's] guilt was *established* beyond a reasonable doubt ... on the theory of accountability even if he did not fire the fatal shot." *People v. Potts,* Rule 23 Order at 6 (emphasis added). But it concluded its analysis by ruling only that "the evidence of [petitioner's] participation in the assault on deceased was *sufficient* to prove him guilty beyond a reasonable doubt." *Id.* at 7 (emphasis added).

There is no need to resolve this ambiguity. For even if the appellate court did find as fact that petitioner was guilty under an accountability theory, this finding cannot receive the § 2254(d) presumption of correctness. Section 2254(d) specifically provides that its presumption does not apply where the petitioner establishes, *inter alia:*

> (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
>
> \* \* \* \* \* \*
>
> (6) that the [petitioner] did not receive a full, fair and adequate hearing in the State court proceeding; or

> (7) that the [petitioner] was otherwise denied due process of law in the State court.

28 U.S.C. 2254(d)(2), (6), (7).

All three factors infect the appellate court's findings here. Petitioner did not know that he would be tried under a theory of accountability in the proceedings before the trial court, and the State advanced this theory for the first time in its response brief on direct appeal. Yet, the appellate court gave petitioner no opportunity to present evidence on this theory. The court thus deprived petitioner of adequate procedures to defend himself, and violated petitioner's due process rights to an appeal on the crime for which he was convicted. *See Dunn v. United States,* 442 U.S. at 106–07, 99 S.Ct. at 2194–95. To the extent the appellate court "found" petitioner guilty beyond a reasonable doubt, then, that finding does not bind this court.

Under § 2254(d), once the presumption of correctness falls, this court may undertake its own factual inquiry. Such an inquiry in this case, however, would involve a full-blown trial as to petitioner's guilt under a theory of accountability. Whether this trial would violate petitioner's double jeopardy rights is an interesting question, but one this court need not resolve.

The state is fully capable of enforcing its own criminal laws, and for this court to try the case here would represent an unwarranted intrusion into state sovereignty. If the state determines that it has enough evidence to bring petitioner to trial on a theory of accountability, it can attempt to do so in its own courts, and those courts can resolve any double jeopardy problems that arise. For now, however, it is evident that petitioner's conviction is void.

*Effective Assistance of Counsel*

This court did not need to address petitioner's ineffective assistance claim in order to find the conviction void on the two grounds discussed above. Even assuming arguendo that there was overwhelming evidence to convict petitioner of murder under a theory of accountability, and that counsel made a reasonable tactical decision based on this evidence to advise petitioner to stip-

ulate as he did, petitioner is entitled to habeas relief. Nevertheless, to complete the resolution of petitioner's claims, the court will examine his ineffective assistance argument.

Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), "the burden on the petitioner is a heavy one. In order to establish that he was denied his sixth amendment right to counsel, he must affirmatively establish both 'components' of the *Strickland* analysis—the 'performance' component and the 'prejudice' component." *Sullivan v. Fairman,* 819 F.2d 1382, 1390 (7th Cir.1987). To satisfy the former, petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. To satisfy the latter, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

### 1. *Performance of Counsel*

■ This court has thus far assumed arguendo, as respondent has insisted, that there was overwhelming evidence to convict petitioner under a theory of accountability. The trial court record reveals the defect in this assumption. The "overwhelming" evidence of petitioner's participation with another in the shooting of Miller consists of the .380 caliber shell-casing found at the top of the stairwell, and the fact that the .380 caliber semi-automatic and the .38 caliber pistol were hidden together under the couch in Apartment 412. These two facts might represent *sufficient* evidence to affirm a factual finding that petitioner and someone else joined together in shooting at Miller from the top of the stairs, but they certainly do not constitute overwhelming evidence of this fact.

Indeed, respondent's description of the evidence as "overwhelming" appears almost facetious in light of the proceedings before the trial court. That the court "found" petitioner guilty of manslaughter is not important, since whatever the strength of the evidence on the accountability theory, the court was considering only petitioner's guilt as a principal. But what is curious is why the state, with "overwhelming" evidence of petitioner's guilt as an accomplice, chose not to present this theory to the court.

Of course, the fact the evidence against petitioner was less-than-overwhelming does not mean that counsel could not have legitimately advised petitioner to plead guilty (or stipulate guilt) to voluntary manslaughter. Even a minimal chance of being convicted for murder might well lead a reasonable attorney to counsel his client that a manslaughter plea would be a prudent result. *See, e.g., Thompson v. Wainwright,* 784 F.2d 1103 (11th Cir.1986).

Counsel's advice here, however, was not nearly so salutary. By accepting guilt of voluntary manslaughter, petitioner did not thereby protect himself from a murder conviction. Instead, petitioner agreed, at counsel's behest, to concede guilt to voluntary manslaughter but still face a jury trial on the murder charge if the court found that the evidence warranted one. Twelve years in jail is not a lifetime, but it is no bargain either. Whether counsel accepted this outcome because he never realized the absence of proof of causation, or instead because he feared the prosecution would eventually raise the accountability theory, petitioner was entitled to better. *See Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). With constitutionally adequate legal assistance, he would have received it.

### 2. *Prejudice*

■ In determining whether counsel's deficient performance prejudiced petitioner, it is necessary to revisit the two possible interpretations of the trial court proceedings. Viewed as a bench trial, the inquiry focuses on whether the trial court would have convicted petitioner had he been properly represented at trial. *U.S. ex rel. Cross v. DeRobertis,* 811 F.2d 1008, 1014–1016 (7th Cir.1987); as a guilty plea, it turns on whether the defendant can show "that there is a reasonable probability that,

but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 62, 106 S.Ct. 366, 372, 88 L.Ed.2d 203 (1985); *Key v. United States*, 806 F.2d 133, 138 (7th Cir.1986).

That petitioner might have been acquitted had counsel adequately defended him cannot be gainsayed. Without proof of causation, the court could not have convicted him as a principal. And even under the accountability theory—due process problems aside—there is at least a reasonable possibility that the court would have returned a not-guilty verdict. The evidence that petitioner joined with another in shooting at Miller—i.e., the shell casings found in the fourth floor stairwell and the location of the guns together following the crime—does support respondent's accountability theory. Against this evidence, however, the trier of fact would have to weigh the omission of any mention of another person shooting Miller as he fled, and the fact that .380 caliber shell casings were found on other floors of the apartment building as well. The trial court might well have determined that Miller sustained the .380 caliber bullet wounds after he escaped petitioner's fire and, accordingly, that petitioner was not an accomplice to the killing.

The alternative inquiry—whether petitioner would have pleaded guilty had counsel competently represented him—presents a more difficult question. Earlier, this court found it unnecessary to answer this question in ruling on the validity of the guilty plea. This was because, even if petitioner pleaded guilty based on his fear of conviction as an accomplice, his guilty plea as a principal was not knowing and voluntary. But because a viable Sixth Amendment claim requires a reasonable probability that petitioner would have pleaded differently with effective legal advice, *Garga-*

*no v. United States*, 852 F.2d 886 (7th Cir.1988), the court must address the question now.

An evidentiary hearing would ordinarily be required to determine what petitioner would have done had he been properly represented. The overlap of the two components of the *Strickland* test, however, indicates that such a hearing is not needed here. As explained above, competent counsel would not have advised petitioner to plead as he did. But petitioner did not have competent counsel, so—whatever the believability of petitioner's testimony that he would not have pleaded guilty with different advice—for this court to find that he would have done so would require a level of speculation inappropriate under the unusual circumstances of this case. *Cf. United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (in certain circumstances, prejudice is presumed). Accordingly, petitioner has satisfied the "prejudice" component of the *Strickland* test, and is entitled to a writ of habeas corpus on the grounds of ineffective assistance of counsel.

### ADDENDUM

The discussion above resolves the merits of the habeas petition. This court feels compelled, however, to add an additional comment on the refusal of petitioner's appointed counsel to advocate the petition in this habeas proceeding. Counsel cited Rule 11 of the Federal Rules of Civil Procedure ("the Civil Rules") as precluding him from filing a brief in support of the petition—a petition he deemed frivolous. In light of the ruling above granting the petition, counsel obviously erred in his judgment of the petition's merits. Equally disturbing, however, is the analysis which led to this misjudgment.

Pursuant to its 1983 amendments, Rule 11 of the Civil Rules [7] prohibits lawyers in

---

7. Rule 11 of the Federal Rules of Civil Procedure provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represent-ed by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. . . . The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief

ordinary civil litigation from, *inter alia*, bringing or pursuing frivolous claims—i.e., claims that "are not reasonably based on the law or in fact," *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1433 (7th Cir.1987)—on behalf of their clients. Although ethical rules in effect prior to the amendments, *see, e.g.*, Model Code of Professional Responsibility, DR 7–101 (1979), as well as the old version of Rule 11 itself, placed constraints on zealous advocacy, the amended rule imposes substantially greater obligations on attorneys to avoid frivolous litigation. *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir.1986); *see generally* Advisory Committee Note on 1983 Amendments, 97 F.R.D. 165 (1983).

■ In criminal cases Rule 11 does not apply. "Ethical considerations and rules of court prevent counsel from making dilatory motions, adducing inadmissible or perjured evidence, or advancing frivolous or improper arguments," *McCoy v. Court of Appeals of Wisconsin, District I*, —— U.S. ——, 108 S.Ct. 1895, 100 L.Ed.2d 440 (1988); *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), but the (minimal) danger that new Rule 11 may chill creative advocacy and impede the development of the law, though acceptable in the civil forum, make it inappropriate in the criminal context. For, whereas Rule 11 prohibits litigation not *reasonably* based in law and fact, the Sixth Amendment right to counsel allows the criminal defense lawyer to represent a client even where he is "convinced before trial that any defense is wholly frivolous," *id.*, and to appeal a conviction unless it "lacks *any* basis in law or fact." *Id.* 108 S.Ct. at n. 10 (emphasis added); *see also Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

The applicability of Rule 11 to habeas cases is unclear. The Sixth Amendment right to counsel does not apply in habeas proceedings, *Knaubert v. Goldsmith*, 791 F.2d 722 (9th Cir.1986), *cert. denied*, 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986); *see Jones v. Morris*, 590 F.2d 684 (7th Cir.), *cert. denied*, 440 U.S. 965, 99 S.Ct. 1513, 59 L.Ed.2d 780 (1979), so the broad protection afforded counsel in criminal cases does not preclude Rule 11 sanctions against lawyers representing habeas petitioners. On the other hand, because "the writ of habeas corpus is the fundamental safeguard against arbitrary and lawless state action," courts must "jealously guard against" rules that could impair its efficaciousness. *Harris v. Nelson*, 394 U.S. 286, 290–91, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969). Rule 11's potential chilling effect on zealous legal advocacy certainly implicates such concerns. *See* 18 U.S.C. § 3006A(a) (authorizing the district court to appoint counsel to financially eligible habeas petitioners whenever "the court determines that the interests of justice so require"); Rule 8(c) of the Rules Governing Section 2254 Cases ("the Habeas Rules") (requiring the appointment of counsel pursuant to § 3006A(a) whenever an evidentiary hearing is required in a habeas case).

Neither the federal rules nor the caselaw provide a definitive answer to Rule 11's applicability in habeas cases. Although habeas proceedings are characterized as civil, the Civil Rules do not automatically apply. *Schlanger v. Seamans*, 401 U.S. 487, 490 n. 4, 91 S.Ct. 995, 997 n. 4, 28 L.Ed.2d 251 (1971). Rule 11 of the Habeas Rules—not to be confused with Rule 11 of the Civil Rules—provides that the Civil Rules should only be employed in habeas cases "to the extent that they are not inconsistent with [the Habeas Rules]." Meanwhile, Civil Rule 81(a)(2) instructs that "[t]hese rules

---

formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule,

the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

are applicable to proceedings for ... habeas corpus ... to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions." Since no Habeas Rule nor statute expressly provides for or precludes sanctions in habeas cases, the question becomes whether the drafters of the amendments to Civil Rule 11 would have considered it applicable in habeas proceedings. *Harris v. Nelson,* 394 U.S. at 298, 89 S.Ct. at 1090.

Two federal courts have applied Rule 11 in the habeas context; neither provides a great deal of help here. In *Taylor v. Commonwealth of Pennsylvania,* 686 F.Supp. 492 (M.D.Pa.1988), the district court imposed Rule 11 sanctions on government counsel for filing a frivolous motion to dismiss. Because it did so without any discussion, and because imposing sanctions against the government raises none of the concerns raised by Rule 11 sanctions against criminal defendants and habeas petitioners, this case has little weight here.

In *United States v. Quin,* 836 F.2d 654 (1st Cir.1988), a divided panel of the First Circuit did impose Rule 11 sanctions against a habeas petitioner's attorney for filing a frivolous petition seeking to avoid deportation following a criminal conviction. Yet, while the dissenting judge read the majority's ruling as adopting Civil Rule 11 into federal habeas proceedings, *Id.* at 558–59 (Coffin, J., dissenting), the majority disagreed:

> There may be much merit in our brother's apprehension that in the ordinary case, where a penal consequence is genuinely at issue, counsel's fear of personal sanctions might impermissibly restrict free recourse to the Great Writ. While, as he concedes, the court may look to the Criminal Rules or the Civil Rules, we quite agree that the latter should not be applied if that "would be inconsistent or inequitable in the overall framework of habeas corpus." *United States v. Frady,* 456 U.S. 152, 166–68 n. 15 [102 S.Ct. 1584, 1593–94 n. 15, 71 L.Ed.2d 816] (1982). Here, however, Quin is seeking to achieve by the § 2255 petition a purely civil effect, the prevention of deportation.
>
> If Quin were seeking the same objective by attacking the res judicata effect of a prior civil proceeding, no one would suggest that counsel should not be held to the requirements of Rule 11. Should counsel's obligations be any less because the proceeding which brought on the threat of deportation was criminal, or because habeas corpus provided the mechanical means for attacking the judgment? We see no reason why counsel seeking to inject a frivolous roadblock in a civil matter should not be held to the standard of good faith called for by the civil rule.

*Id.* at 657. Thus, *Quin* leaves unresolved the applicability of Rule 11 sanctions to the ordinary habeas case.

Perhaps the most persuasive authority for resolving the issue lies in the absence of any affirmative ruling on it. That hundreds of frivolous habeas petitions are filed each year in the federal courts is too axiomatic for citation. The habeas statutes and rules provide the federal courts with ample power to cut these petitions off at the pass by dismissing them either immediately or after the government has filed an answer. To add Rule 11 to these powers would present a barrier to the ability of individuals to obtain the special relief only habeas provides—a barrier that, though not inconsistent with the express provisions of the Habeas Rules, is certainly inconsistent with their spirit.

The instant case exemplifies the risks imposed by Rule 11 in the habeas context. The fear of Rule 11 sanctions led petitioner's court-appointed counsel to forego briefing the petition. Without such fear, he almost certainly would have taken a shot at supporting petitioner's claims, and in the process might well have discovered the errors lurking within the state proceedings. Relying on Civil Rule 11, however, he deprived his client of the zealous advocacy to which the latter was entitled.

That Rule 11 may explain counsel's silence does not, of course, justify it. An extensive analysis was necessary to cull

out the numerous constitutional infirmities in the state court record, but little more than a reading of the trial transcript and appellate court ruling reveals glaring problems with them. Either counsel did not take the trouble to undertake this minimal level of investigation into his case, or his understanding of constitutional law falls far below acceptable levels for habeas advocacy before this court.

That counsel was appointed by this court only aggravates the irresponsibility of his conduct. By appointing counsel for petitioner here, this court telegraphed its belief that the petition contained some merit. This initial impression did not necessarily mean that the petition was meritorious, nor did it authorize appointed counsel to make any argument he liked without concern for its merits. At the least, however, it should have inspired counsel to thoroughly review and assess the proceedings in this case. By failing to do so, counsel violated the trust of this court, and the ethical standards of his profession. *See* Illinois Supreme Court Disciplinary Rules, Ill.Rev. Stat. ch. 110A, Rules 6–101 ("A lawyer shall not (handle a legal matter which he knows or should know that he is not competent to handle, ... [or] (2) handle a legal matter without preparation adequate in the circumstances....").

### CONCLUSION

Petitioner is granted a writ of habeas corpus on his conviction for voluntary manslaughter. That judgment is void, and respondent shall release petitioner within thirty days unless further proceedings are brought against him in the Illinois state courts within that time.